CHARLES E. NEWTON *vs.* COMMONWEALTH.

Suffolk. December 8, 1955. — February 3, 1956.

Present: QUA, C.J., WILKINS, WILLIAMS, & WHITTEMORE, JJ.

*Practice, Criminal,* Exceptions: general exception; Assistance of counsel. *Constitutional Law,* Assistance of counsel, Due process of law.

A single general exception to lengthy findings and rulings of a single justice in a proceeding on a writ of error to reverse the sentence in a criminal case must be overruled. [524]

Findings in a proceeding on a writ of error respecting the circumstances in which the plaintiff in error, after being indicted for murder and found by psychiatrists upon examination under G. L. (Ter. Ed.) c. 123, § 100A, to be suffering from a mental disease affecting his criminal responsibility, was advised by competent and experienced counsel to plead guilty to murder in the second degree in view of the likelihood, if the indictment should be tried, of a verdict either of guilty in the first or second degree or of not guilty by reason of insanity and in view of his expressing to counsel an abhorrence of and a desire not to be committed to an institution for the insane, and did so plead in accordance with such advice, then having sufficient mental capacity to know what he was doing, negatived contentions by him that his representation by counsel in the murder case had been inadequate and negligent, that he had been coerced into pleading guilty, and that he had been deprived of his constitutional right to proper representation by counsel, and justified affirmance of the judgment of the Superior Court sentencing him to imprisonment for life on his plea. [530]

PETITION for a writ of error, filed in the Supreme Judicial Court for the county of Suffolk on April 20, 1954.

The case was heard by *Spalding, J.*

*George H. Lewald,* for the plaintiff in error.

*Daniel J. Finn,* Assistant Attorney General, for the Commonwealth.

QUA, C.J.   This case is here on a bill of exceptions directed to the action of a single justice of this court in ordering affirmed on writ of error a judgment of the Superior Court entered February 10, 1947, sentencing the petitioner to imprisonment for life[1] on his plea of guilty in the second degree to an indictment charging him with the murder of his wife.

The original substitute petition, the return to the writ, the answer of the Commonwealth, the findings, rulings, and order for judgment of the single justice, and the petitioner's claim of exceptions, all being papers on file in this court for the county of Suffolk, are all referred to in the bill of exceptions as incorporated therein and have been certified to us by the single justice.   We treat them as included in the record before us.   See G. L. (Ter. Ed.) c. 231, § 135, as amended by St. 1941, c. 187, § 1.   The return to the writ contains a full record of the proceedings in the trial court, including a transcript of what took place when the petitioner's plea of guilty in the second degree was accepted.

The petitioner took only a single exception to the findings, rulings, and order for judgment — a document of nearly seven typewritten pages.   No attempt was made to point out any particular error or errors of the single justice upon which the petitioner intended to rely.   It is well settled as a matter of State practice that an exception of that sort is not valid and must be overruled.   *Matter of Loeb*, 315 Mass. 191, 194–195, citing many cases.   Other recent cases are *Robinson* v. *Trustees of New York, New Haven & Hartford Railroad*, 318 Mass. 121, 134, *Barton* v. *Cambridge*, 318 Mass. 420, 424, *Commonwealth* v. *Shea*, 323 Mass. 406, 416, *Matter of Ruby*, 328 Mass. 542, 543, and *DiCicco* v. *Graphic Machine Corp.* 329 Mass. 695, 696.   This rule of practice alone requires that the exceptions be overruled, and we so hold.   It is our understanding that reasonable State rules of practice apply to the raising of Federal questions in State courts.   *Parker* v. *Illinois*, 333 U. S. 571, 574–575.   *Michel* v. *Louisiana*, 350 U. S. 91.

---

[1] Life prisoners may be paroled after twenty years.   G. L. (Ter. Ed.) c. 127, § 133A, inserted by St. 1955, c. 770, § 70.

But in a case as serious as this it seems proper to add that in any event a careful examination of the record has disclosed no error.

The petitioner complains that his constitutional rights were violated in that he was not properly represented by court appointed counsel. The petitioner, having abandoned one of his original claims that the counsel appointed was incompetent, now contends that that counsel was negligent in advising the petitioner to plead guilty and that "by threat and intimidation [he] caused the petitioner to plead guilty because he felt it was the best course to follow." These questions are open on writ of error, because, if the petitioner's contentions should be sustained, they would bear upon his right adequately to protect himself by the usual process of exception and appeal in the trial court. *Aronson* v. *Commonwealth*, 331 Mass. 599, 601–602.

The facts and the law are so fully covered by the findings and rulings of the single justice of this court, who saw and heard the witnesses face to face, that we feel that even at the risk of unduly lengthening this opinion we should set them forth here exactly as filed in the county court:

"I find the following facts: Shortly after the petitioner was indicted the District Attorney talked with him and told him that he ought to have the assistance of counsel. Upon learning that the petitioner was without funds, the District Attorney informed him that the court would appoint counsel and would also 'pay the expenses.' The District Attorney then asked the petitioner if he had anyone in mind and the petitioner stated that Mr. Eben G. Townes, a Brockton lawyer, had been acting for him in a civil matter but that he did not know whether he handled criminal cases. The District Attorney suggested to the petitioner that he have Mr. Townes represent him in the murder case. Thereafter, presumably at the petitioner's request, Mr. Townes came to see him at the Plymouth jail and at that time he authorized Mr. Townes to represent him and signed a motion requesting the court to appoint Mr. Townes pursuant to the provisions of G. L. (Ter. Ed.) c. 277, §§ 47, 55, and 56.

Mr. Townes at the time of his appointment had been at the bar approximately thirty years and had had wide experience in the trial of causes, criminal and civil. I am fully convinced that he possessed the requisite experience and ability to deal with a case of the sort here involved.

"In accordance with G. L. (Ter. Ed.) c. 123, § 100A, the so called Briggs law, the petitioner was examined by two psychiatrists of the Department of Mental Health, Dr. Earl Holt and Dr. C. Stanley Raymond. They examined the petitioner at the Plymouth jail on three occasions, October 25, 1946, November 2, 1946, and January 18, 1947. Thereafter they drew up a report which was filed in court on January 28, 1947. This report, which is incorporated in the return, is detailed and comprehensive, and need not be summarized. At the end of the report the examining doctors were asked to answer the following: 'State definitely, whether, in the opinion of the examiner, the prisoner is suffering from any mental disease or defect which would affect his criminal responsibility:' and their reply was, 'As a result of our examination, it is our opinion that this prisoner is suffering from a mental disease which would affect his criminal responsibility.' Earlier in their report the examining doctors had stated that the petitioner showed 'definite evidence of paranoid psychosis.'

"Perhaps at this point a word or two concerning the circumstances of the homicide would be pertinent, as they are not in dispute, and shed some light both on the appropriateness of the advice given to the petitioner by Mr. Townes and on the matter of disposition.

"It appears that on September 6, 1946, the petitioner went to a restaurant in Brockton with his wife and while there he drew a revolver and shot her several times. To a policeman who came to the scene shortly thereafter he stated 'I murdered my wife to which I plead guilty.' It further appeared that the petitioner for some time prior had not been on good terms with his wife and that he had suspected her of having illicit relations with an attorney in Brockton.

"Following his appointment as counsel, Mr. Townes conferred with the petitioner many times. As a result of the Briggs law report filed on January 28, 1947, the problems confronting Mr. Townes were exceedingly difficult and grave. He now had an opinion from two psychiatrists to the effect that his client was suffering from a mental disease which would affect his criminal responsibility. But this opinion, although contained in a report filed pursuant to § 100A, was not binding on a jury and in no way precluded them from reaching a contrary conclusion. Moreover there were subsidiary findings in the report from which Mr. Townes might reasonably conclude that although the petitioner might have been insane in the medical sense he could, nevertheless, from the legal viewpoint be held accountable for his conduct. It is also to be noted that the report of the doctors does not undertake to say what the petitioner's condition as to sanity was at the time of the homicide. As a practical matter if the case went to trial one of three results might be expected: a verdict of murder in the first degree, a verdict of murder in the second degree, and a verdict of not guilty by reason of insanity. In the first situation a mandatory death sentence was required; in the second, a mandatory life sentence; and in the third, the court under G. L. (Ter. Ed.) c. 123, § 101, was required to order the petitioner committed 'to a state hospital or to the Bridgewater state hospital during his natural life.'[1] There was, of course, a possibility that the petitioner might be acquitted or be found guilty of manslaughter, but an experienced trial lawyer, in view of the evidence in possession of the prosecution, might well have concluded that such verdicts were no more than remote possibilities. Another problem confronting Mr. Townes was his client's intense abhorrence of being committed to an insane asylum. He had first hand knowledge of what they were like, as he had once worked

---

[1] "Section 101 further provides that the 'Governor, with the advice and consent of the council, may discharge such a person therefrom when he is satisfied after an investigation by the department that the discharge will not cause danger to others.'"

at a state hospital, and he made it very clear to Mr. Townes that he did not want to be committed to one.

"Faced with these difficulties Mr. Townes was of opinion that the best course open to the petitioner was to plead guilty to so much of the indictment as charged second degree murder. He then conferred with Mr. Justice Forte who was at that time presiding at the criminal session where the case would be tried or disposed of, and the question of a second degree murder plea was discussed. Both the judge and Mr. Townes realized that no such plea ought to be accepted in view of the Briggs law report on file, and the question of a further examination of the petitioner was discussed. Although the evidence is sharply conflicting on this point, I find that the petitioner was again examined by the two doctors who had made the Briggs law examination. This examination was made a few days prior to February 10, 1947, the date of disposition. No formal report of their findings was made to the department of mental diseases or was filed in court, but, as will appear presently, they stated to the court the results of their reëxamination at the time the petitioner was sentenced.

"On February 10, as a result of prearrangement between the judge, the District Attorney and Mr. Townes, and with the knowledge and approval of the petitioner, the petitioner was brought into court and Mr. Townes informed the court that his client desired to retract his plea and to plead guilty to so much of the indictment as charged second degree murder. The judge stated that he could not accept such a plea, in view of the Briggs law report on file, unless he was satisfied that the petitioner had sufficient mental capacity to enter the plea. Doctors Holt and Raymond were then called to the stand by the District Attorney and in response to questions put by him each testified that the petitioner had the mental capacity to distinguish between right and wrong, that he had the intelligence and capacity to have a criminal intent and purpose, that he understood the gravity of the charge, and that he would understand the consequences attaching to a plea of guilty. The doctors

made it clear that these conclusions related to the petitioner's condition as of the time they were testifying. The judge then asked Mr. Townes whether he agreed with this testimony and whether from his own observations his client had the mental capacity to understand what he was doing. Mr. Townes answered both questions in the affirmative. The petitioner then retracted his plea of not guilty and pleaded guilty to so much of the indictment as charged second degree murder.

"There was no error. The petitioner was represented by competent and experienced counsel. The petitioner does not contend otherwise and at the hearing before me his present counsel waived the sixth assignment of error alleging that 'the court was neglectful in its manifest duty to appoint counsel able to conduct a faithful and proper defence.' The petitioner does contend, however, that Mr. Townes was neglectful and careless in the manner he handled the petitioner's case. I do not so find. On the contrary, I find that Mr. Townes gave the case careful and conscientious consideration and, despite testimony to the contrary by the petitioner, did not exert pressure, duress or coercion upon him to plead guilty. With the advantage of hindsight the petitioner apparently now thinks that it would have been better to have risked a trial which might have resulted in a verdict of not guilty by reason of insanity. While this would have meant that he would be committed to a state hospital for his natural life there would be a possibility that he might later be discharged by the Governor and Council. But this result, as pointed out above, was by no means a certainty; there were other possible verdicts, one of which would have carried the death penalty. I am of opinion that, faced with a difficult situation and in the light of the circumstances then obtaining, Mr. Townes advised a course which he believed to be for the best interests of his client, and was not unreasonable, and which his client, who then had sufficient capacity to do so, approved. The petitioner has been deprived of no rights under either Art. 12

of the Declaration of Rights or the Fourteenth Amendment, and it is ordered that the judgment below be affirmed."

The findings of the single justice are clear and his rulings were right. The insurmountable difficulty confronting the petitioner is simply that the single justice who heard his case on the writ of error did not believe that his representation by counsel in the trial court was negligent or inadequate or that any pressure was placed upon him to plead guilty, and there was ample evidence both before the trial judge in the Superior Court when he accepted the plea and before the single justice of this court at the hearing on the writ of error that the petitioner had mental capacity to plead guilty in the second degree.

After the event it is not too difficult to find some fault with the manner in which any case has been conducted, but where the court has appointed competent counsel and no dishonesty is charged it is seldom that counsel's method of handling a case can properly be held to have impaired the constitutional rights of his client. Little can be added to what was said in *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 26–27. But see also *Michel* v. *Louisiana,* 350 U. S. 91, 100–101; *Tompsett* v. *Ohio,* 146 Fed. (2d) 95, 98; *Diggs* v. *Welch,* 148 Fed. (2d) 667; *United States* v. *Ragen,* 166 Fed. (2d) 976; *Pelley* v. *United States,* 214 Fed. (2d) 597, 600–602; and *Wilson* v. *State,* 222 Ind. 63, 83. This case is no exception to the general rule. We have examined the cases cited by the petitioner, most of which are from two jurisdictions. Some are distinguishable from the present case. With one or two we might not agree. Nothing would be gained by discussing or citing them.

*Exceptions overruled.*