VINCENT P. DELLE CHIAIE *vs.* COMMONWEALTH.

Suffolk.   January 6, 1975. — April 29, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, & WILKINS, JJ.

Practice, Criminal, Assistance of counsel. *Constitutional Law,* Due
   process of law, Assistance of counsel, Admissions and confessions.
   *Error, Writ of. Error,* Whether error harmful. *Words,* "In-
   effective."

A convicted murderer may properly challenge the effectiveness of his
   trial counsel by a petition for a writ of error. [530]
Normally a convicted murderer may not challenge by a petition for a
   writ of error factual issues which might have been litigated at
   his trial, because such issues should be raised on a motion for a
   new trial, but where the petitioner's trial was held many years
   ago, the trial judge and defense counsel had since died, and the
   petitioner had twice failed to procure collateral review, most re-
   cently in a Federal court where the Commonwealth represented

that it would not oppose an evidentiary hearing in the courts of the Commonwealth, the petitioner was permitted to raise such issues by means of a writ of error. [530-531]

There was no merit to the contention that the defendant suffered prejudice because he was not represented by counsel at his arraignment on a murder charge and had attempted to plead guilty at that time, where the proffered plea was not offered or admitted in evidence at the subsequent jury trial. [531-532]

A defendant, indicted for murder, was not deprived of a fair trial by an impartial jury because of pre-trial publicity where the last article appeared about nine weeks before the trial started, where the prospective jurors had been questioned generally on voir dire about their bias, and two had been excused because of possible prejudice from exposure to newspaper articles, and where the defendant had not used up all his peremptory challenges. [532]

A finding by the single justice that a confession signed by a defendant to a murder charge was not coerced was warranted where there was evidence that the confession had been compiled from responses to questions put to the defendant by police officers, that the defendant read the confession aloud and signed it, and that both the defendant and defense counsel admitted that the confession was not exacted by violence, threats or promises. [532-536]

On a petition for a writ of error brought by a convicted murderer, it was not reversible error for the single justice to refuse to admit in evidence before him statements made by the chief of police regarding the murder and events following it, after the single justice had heard the evidence de bene and stated that the admission of such evidence would not have altered his decision to deny the writ. [539]

PETITION for a writ of error filed in the Supreme Judicial Court for the county of Suffolk on September 8, 1971.

The case was heard by *Hennessey, J.*

*Gordon A. Martin, Jr.,* for the petitioner.

*Wade M. Welch,* Assistant Attorney General, for the Commonwealth.

TAURO, C.J.    This proceeding on writ of error is before us on the petitioner's exceptions to the findings, rulings and order of a single justice of this court affirming the judgment of the Superior Court.

The petitioner was tried in 1947 for the murder of a seven-year old girl.[1]   He was found guilty of murder in the first degree and sentenced to death.   The petitioner appealed that conviction pursuant to G. L. c. 278, §§ 33A-33G, as amended by St. 1939, c. 341, and we affirmed. *Commonwealth* v. *Delle Chiaie,* 323 Mass. 615 (1949).   Thereafter, the Governor commuted the petitioner's sentence to life imprisonment.

The petitioner filed a petition for writ of error in 1966. The petition was dismissed by a single justice and we affirmed in a rescript opinion, stating that the petitioner "fell far short of presenting the minimum material necessary for a proper consideration of such issues." *Delle Chiaie* v. *Commonwealth,* 353 Mass. 771, 772 (1968).   Both the parties and the single justice agree that this was not a dismissal on the merits.

The petitioner then filed for a writ of habeas corpus in the United States District Court.   The petition was dismissed, and the dismissal was affirmed on the ground that the petitioner had not exhausted his available State remedies.   The court noted that an evidentiary hearing should be held, but indicated that it would be more appropriately conducted in the courts of the Commonwealth. *Delle Chiaie* v. *Picard,* 445 F. 2d 804 (1st Cir. 1971).

In order to pursue his State remedies, the petitioner then filed a petition for writ of error in this court.   The writ issued and a hearing was held before a single justice in October, 1972.   The petition, as ultimately amended, assigned the following errors which assertedly deprived the petitioner of his constitutional rights both before and during his trial: (1) he was unrepresented by counsel at his District Court arraignment, (2) he was prejudiced by extensive pre-trial publicity, (3) a coerced confession was

---

[1] The facts are outlined in our prior opinion, *Commonwealth* v. *Delle Chiaie,* 323 Mass. 615, 616 (1949).   Additional facts will be discussed where necessary in the course of the opinion.

introduced at trial over his objection and exception, and (4) he was denied the effective assistance of counsel.

At the hearing, the single justice had before him the transcript of the Superior Court trial, various newspaper clippings appearing near the time of the murder, and the testimony of the petitioner. Both the Commonwealth and the petitioner were given an opportunity to present additional witnesses, but neither chose to do so. Based on the evidence before him, the single justice found that no constitutional error had been established and affirmed the judgment below. There was no error.

1. Before proceeding to analyze each exception taken by the petitioner to the order of the single justice, we are faced with the question whether a writ of error is the appropriate vehicle for the petitioner to use in raising his claims. *Cortellesso* v. *Commonwealth,* 354 Mass. 514, 517-518 (1968). The Commonwealth argued before the single justice that a motion for a new trial would be the proper procedure. While it is true that a writ of error is appropriate to raise only those factual issues which the petitioner had "no legally sufficient opportunity to litigate . . . at the trial," *Aronson* v. *Commonwealth,* 331 Mass. 599, 602 (1954), we have held that a challenge to the effectiveness of trial counsel is such an issue. *Newton* v. *Commonwealth,* 333 Mass. 523 (1956). See *Lamoureux* v. *Commonwealth,* 353 Mass. 556 (1968).

To the extent that the petitioner raises factual issues, the Commonwealth is correct that ordinarily these issues should be dealt with on a motion for a new trial. *Earl* v. *Commonwealth,* 356 Mass. 181 (1969). See *Thibodeau* v. *Commonwealth,* 366 Mass. 452, 459, fn. 2 (1974). However, there are a number of factors in this case which compel us to depart from the general rule and to allow the petitioner to raise his claims by writ of error. First, the trial in this case was held almost twenty-eight years ago. Both defense counsel and the trial judge have since died. This is the petitioner's second attempt at collateral review, the first having failed on technical

grounds. *Delle Chiaie* v. *Commonwealth,* 353 Mass. 771 (1968). Finally, the petitioner is here after having been denied habeas corpus review in the Federal courts, where the Commonwealth made representations to the effect that it would not oppose an evidentiary hearing in the courts of the Commonwealth. In these special circumstances, we believe the interests of justice will best be served by allowing the petitioner to proceed by writ of error.

2. There was no error in the single justice's finding that the petitioner suffered no prejudice from the lack of counsel at his arraignment. We held in *Chin Kee* v. *Commonwealth,* 354 Mass. 156, 163-164 (1968), that *Hamilton* v. *Alabama,* 368 U. S. 52 (1961), did not impose a "rule of thumb" requiring automatic reversal in every case where a defendant was without counsel at arraignment. We said instead that we would look at the circumstances as reflected in the record to determine whether the lack of counsel was harmless beyond a reasonable doubt. Our holding there was not altered in light of the United States Supreme Court decisions in *White* v. *Maryland,* 373 U. S. 59 (1963), and *Arsenault* v. *Massachusetts,* 393 U. S. 5 (1968). See *Commonwealth* v. *Lussier,* 359 Mass. 393, 398 (1971). See also *Chin Kee* v. *Commonwealth,* 407 F. 2d 10 (1st Cir. 1969), cert. den. 395 U. S. 982 (1969). Cf. *Gerstein* v. *Pugh,* 420 U. S. 103, 122-123 (1975). Thus, our inquiry properly turns to whether the absence of counsel in this case was harmless beyond a reasonable doubt.

The single justice found that, although the petitioner attempted to plead guilty at the District Court arraignment, "the proffered plea . . . was not offered or admitted at the subsequent jury trial." Our review of the record confirms this fact. Furthermore, there is no allegation that the petitioner lost any substantive rights as a result of his plea, which was not accepted by the court. In light of these facts, we believe the single justice's

finding was correct, and we hold that any error was harmless beyond a reasonable doubt.

3. The single justice did not err in finding that the petitioner had not shown that pre-trial publicity deprived him of a fair trial by an impartial jury. The mere existence of pre-trial publicity itself is not sufficient to require reversal of a conviction. *Sheppard* v. *Maxwell,* 384 U. S. 333, 354-355 (1966). It constitutes a denial of due process only where the petitioner can show that such publicity deprived him of his right to a fair trial. See *Commonwealth* v. *McLaughlin,* 352 Mass. 218, 225 (1967), cert. den. 389 U. S. 916 (1967). See also *Commonwealth* v. *Stanley,* 363 Mass. 102 (1973).

The record discloses that the publicity which the petitioner contends biased the jury was concentrated in headlines and news stories within a six-day period following the homicide. The last article appeared approximately nine weeks prior to the beginning of the trial, and there was no adverse publicity from that time up through the trial. While it is true that many of the articles might well have been prejudicial if read and remembered by members of the jury, the petitioner has failed to establish this to be a fact.

A review of the voir dire indicates that the judge asked the statutory questions then applicable in capital cases, G. L. c. 234, § 28, and c. 278, § 3. He explained the meaning of the questions, and made particular inquiry regarding the prior publicity on a number of occasions. As a result, two jurors were excused at least in part due to newspaper prejudice. Furthermore, the petitioner did not use up all his peremptory challenges. On the whole, after a thorough examination of the transcript, "We find no indication that . . . [the petitioner] was tried before a prejudiced jury." *Commonwealth* v. *McLaughlin, supra.* Accordingly, there was no error in the finding of the single justice.

4. As to the confession which was allegedly coerced by the presence of an angry crowd around the building to

which the petitioner was taken for questioning, the single justice found that no such coercion had been shown. The petitioner's trial took place many years before the decisions in *Escobedo* v. *Illinois,* 378 U. S. 478 (1964), and *Miranda* v. *Arizona,* 384 U. S. 436 (1966), neither of which has been given retroactive effect. *Johnson* v. *New Jersey,* 384 U. S. 719, 726-735 (1966). The admissibility of the petitioner's confession "as a constitutional matter . . . [must be] governed, therefore, by the contemporary case law elaborating the due process standard of voluntariness." *Procunier* v. *Atchley,* 400 U. S. 446, 453 (1971). Thus, the question is whether the will of the petitioner had been overborne to the extent that his confession was not a free and voluntary act, and this is "to be resolved in light of the totality of the circumstances." *Ibid.*

The homicide in this case occurred on Sunday evening. Immediately after the killing, the petitioner went home, changed clothes and began a journey north which eventually ended in Franklin, New Hampshire, where he was apprehended. The petitioner waived extradition and was brought back to Massachusetts by State police officers on Tuesday. When questioned initially, the petitioner told the police that he did not remember what had occurred, but he thought he had been in a fight with a drunk on the night in question. He stated that he also was drunk at the time.

The petitioner was taken to the district attorney's office for questioning and was brought in through an angry crowd. He was not advised of his right to remain silent and when he asked about a lawyer he was told he could have one if he had the money, which he did not. At no time was the petitioner beaten or threatened, and both defense counsel and the petitioner admitted that the statements eventually given were not exacted by violence, threats or promises.

At a voir dire held by the trial judge prior to the admission of the confession, a police officer testified that

Delle Chiaie v. Commonwealth.

the petitioner's statement was made in response to
questions asked of him.   Two police officers testified that
it was then transcribed and given to the petitioner who
read it out loud and signed it.   Defense counsel argued
that, although voluntary in the sense that it was not
coerced, the statement should not be admitted because it
was not in the petitioner's language and because the
petitioner did not understand it.   The trial judge ruled
against the petitioner and admitted the statement.[2]

---

[2] The  confession  reads  as  follows:   "My  name  is  Vincent
Dellechiaie.  I live at 17 Saratoga Street, Lawrence, Mass.   I was
born on February 25, 1926.  My father's name is Frank.  He died on
July 4, 1942.  My mother's name is Mary.  I live at 17 Saratoga
Street with my mother and my four brothers and two sisters.   I was
working at the Kenyon Dye & Finish in Lawrence.   On Sunday,
September 7, 1947, I got up at about 11 a.m. and I remained in the
house until 12:30.   I had dinner there with my brothers and
sisters.   After dinner, somewhere in the neighborhood of 12:30, I
went to the picture show at the Premier in Lawrence.   I do not
remember the name of the picture.   It was a Western, I think.   I
had 2 drinks of beer at Sherman's Cafe before I went to the pictures.
After the picture I called in at Jerry's and had 2 more drinks.   I then
went to the wedding of my cousin at the Hibernian Hall.   There I
met my brother and my friend, Pete, and many of my friends.   I
stayed there until somewhere in the neighborhood of 7 o'clock.
While there I had 9 drinks of beer and 2 drinks of wine.   When I
left the Hibernian Hall I left alone and I went down Hampshire
Street in the direction of the Central Bridge, in the direction of Canal
Street.   Somewhere during the course I met . . . [the girl].   I don't
know just where I met her.   I took her to the Municipal Parking
space and went down the path on the north bank of the river and
then I turned left and went down toward the river.   I took off her
pants and I opened her legs with my hands.   I was going to have
sexual intercourse but she screamed and to stop her from screaming I
picked up a stone and I hit her several times on the head.   She did
not scream after I first hit her with the stone.   I left her there.   I did
not have sexual intercourse with her.   When I left her I did not know
whether she was dead or alive.   When I left her my clothes were
spattered with blood.   I went home and I took off my clothes and I
threw them in the closet, put on my blue suit, and then I went on
the road and hitch-hiked to Franklin, N. H.   On the day I took . . .
[the girl] down the river bank I was wearing a gray plaid suit, the
suit which was taken from my home by the police.   I arrived in
Franklin, N. H. at 11 o'clock the next morning.   I slept a portion of
the night in the woods and arrived in Franklin, N. H. at 11 o'clock

Although defense counsel excepted to its admission, he did not press this as a ground for reversal on appeal. Thus, the petitioner cannot, as a matter of right, press this argument at this time. See *Aronson* v. *Commonwealth,* 331 Mass. 599, 601-602 (1954).

The petitioner now argues that the confession was coerced in that his will was overborne when the statement was made. He contends that, without the aid of counsel, he was unable fully to comprehend the enormity of the consequences involved in signing the confession, in part because of his low I. Q. and lack of education. However, low intelligence, denial of the right to counsel and failure to advise of the right to remain silent are not in themselves coercive. Rather, they are relevent only in establishing a setting in which actual coercion may be exerted to overcome the will of the suspect. *Procunier* v. *Atchley,* 400 U. S. 446 (1971).

In order to establish actual coercion, the petitioner testified before the single justice that he heard an angry crowd outside while he was being questioned, and that one of the police officers asked him what he thought would happen if he were to walk out into the crowd alone. He further testified that the same officer said: "Why don't you make it easy on yourself and confess to it. Admit . . . you committed this crime."

In spite of the petitioner's testimony, the single justice found that the confession was not coerced. Of course, the single justice was not bound to believe the petitioner's testimony, even though uncontradicted. *Jones* v. *Com-*

---

and I looked for employment. I obtained work at Sulloway Hosiery and went to work today, Tuesday, September 9, 1947. At work I was asked to go to the office of the Chief of Police at Franklin, N. H. and there they told me that the Lawrence police wanted to talk with me. I informed them if the Lawrence police would come to Franklin, N. H. I would be glad to return with them, and so I returned with them today.

"I am making this statement because it is my desire to make a clean and honest statement. I feel that I was drunk when this act was committed. Vincent Dellechiaie."

monwealth, 331 Mass. 169, 171-172 (1954). We are bound by the factual findings of the single justice, Commonwealth v. Blondin, 324 Mass. 564, 566 (1949); Guerin v. Commonwealth, 339 Mass. 731, 734 (1959), and we think the inferences he drew from the facts that he found were both warranted and supported by the applicable law. Accordingly, there was no error in the finding of the single justice that the petitioner's confession was not coerced.

5. The petitioner excepts to the single justice's finding that he was not denied the effective assistance of counsel. Defendants have been making this claim with increasing frequency, and on many recent occasions we have set out the standards by which counsel's performance should be judged. Commonwealth v. Bernier, 359 Mass. 13 (1971). Commonwealth v. Dunker, 363 Mass. 792, 797 (1973). Commonwealth v. LeBlanc, 361 Mass. 1, 10-14 (1973). Commonwealth v. Saferian, 366 Mass. 89, 96-98 (1974). Commonwealth v. Rittenberg, 366 Mass. 446, 449 (1974).

We have made it clear that "the guaranty of the right to counsel is not an assurance to defendants of brilliant representation or one free of mistakes; nor does it entitle a reviewing court to engage after the event in a reconsideration of whether counsel's tactical plans . . . were to the client's best advantage." Commonwealth v. LeBlanc, supra, at 13-14. "[T]he representation one receives is not constitutionally infirm unless it is tantamount to no assistance at all," Commonwealth v. Rittenberg, supra, at 449, thus depriving the accused of "a trial in any real sense." Commonwealth v. Bernier, supra, at 17, quoting from Mitchell v. United States, 259 F. 2d 787, 793 (D. C. Cir. 1958), cert. den. 358 U. S. 850 (1958). However, whatever terms are used to formulate the general standard, what is required in each case "is a discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or

inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian, supra,* at 96. After careful review of the record in the instant case, we are unable to say that the petitioner received ineffective assistance of counsel.

Although the petitioner testified before the single justice that he conferred with counsel only once before trial and once before he testified, both times for very brief periods, it is apparent that the attorney was well acquainted with the facts of the case. Even accepting the petitioner's testimony as true, this is not a compelling case for finding ineffective assistance of counsel. See the *Saferian* case, *supra,* at 97. This is not a case, like *Jones* v. *Cunningham,* 313 F. 2d 347 (4th Cir. 1963), or *Coles* v. *Peyton,* 389 F. 2d 224 (4th Cir. 1968), where counsel's failure to consult at length with his client caused the defendant to lose real and substantial rights and defenses.

It is apparent that defense counsel researched and carefully analyzed his case. We note here that there was overwhelming evidence that the petitioner had in fact caused the death of the child.[3] The main defense

---

[3] Aside from the petitioner's confession, the evidence presented by the Commonwealth included four eyewitnesses who had seen the petitioner and the girl together in the vicinity of the killing shortly before the time of death, and three witnesses who observed the petitioner leaving the area a short time later, two of whom observed blood on his clothing. Most of the eyewitnesses described the petitioner as wearing a gray striped suit, and this suit, covered with blood, was found by police in the back of the petitioner's closet. After his apprehension, the petitioner's arms and legs were tested for the presence of blood, and these tests were positive. The strength of the evidence implicating the petitioner is further indicated by the fact that, in his opening argument following presentation of the prosecution's case, defense counsel stated, "[I]t would also be not only futile but would be an insult to your intelligence . . . to say that the facts

asserted was that the petitioner could not remember, and was not aware of, what transpired on the night of the crime.  Defense counsel hoped to secure a conviction on a lesser degree of homicide by negating the necessary elements of deliberate premeditation and perhaps malice.

The main element of the defense was drunkenness, although counsel alluded to the petitioner's general mental capacity in the course of the trial.  He called the petitioner's mother in an attempt to show changes in emotional stability and personality after the petitioner's return from naval service.  Defense counsel also introduced evidence of the petitioner's naval record and a pre-trial competency report to shed doubt on the petitioner's responsibility for his actions.  Although this defense ultimately failed, we cannot say that it was tantamount to no defense at all.  On the contrary, we think defense counsel acted reasonably in light of the strong factual case presented by the Commonwealth.

The petitioner also claims that defense counsel was ineffective in his failure to object properly to admission of the petitioner's confession.  Immediately after the statement was offered, a voir dire hearing was held to determine its admissibility.  Defense counsel's questioning of the police on the voir dire indicated that he had a thorough knowledge of the circumstances attending the petitioner's confession, and he used that information to his best advantage.  Although his objection was on somewhat limited grounds, considering the law applicable at the time, there is no indication that objection on any other ground would have fared better.  Accordingly, we cannot say that defense counsel's actions with regard to the confession constitute ineffective assistance of counsel.

Finally, the petitioner claims that his representation was ineffective in that his counsel failed to move for a

as they have been established, with the connection adding one item, one incident after another, that this defendant was not the person who was responsible for the death of that little girl."

change of venue or a continuance, and failed to conduct a searching voir dire of prospective jurors in light of the allegedly "massive" pre-trial publicity. While other counsel might have attempted to take any or all of these measures, failure by defense counsel to have done so does not constitute reversible error. We will not second-guess tactical decisions of counsel where there is no showing of prejudice. See *Commonwealth* v. *Bernier*, 359 Mass. 13 (1971). See also *Bernier* v. *Moore*, 441 F. 2d 395 (1st Cir. 1971). We have already stated that the petitioner has not shown that he was tried by a prejudiced jury. Accordingly, we cannot say that defense counsel's failure to pursue these particular tactics was error, nor can we say that the single justice erred in finding that the petitioner was not deprived of the effective assistance of counsel.

6. The petitioner takes exception to the single justice's exclusion of statements made by the chief of the Lawrence police department regarding the homicide and the events following it.[4] The single justice heard this evidence de bene and ruled the statements inadmissible, but stated that his ultimate findings and rulings would not have been different had they been admitted. We find no reversible error in the exclusion of this evidence.

We need not decide whether these statements should have been admitted pursuant to G. L. c. 233, § 65, because the statement of the single justice, that admission of this evidence would not have changed his ultimate decision, "is to be given full credence," and nothing in the record "tends to cast doubt upon this statement." *Berlandi* v. *Commonwealth*, 314 Mass. 424, 451 (1943). Thus, even if it was error not to admit this evidence, it was not prejudicial in any event. *Jameson* v. *Hayes*, 250

---

[4] Examples of the statements of the police chief included the following: "Never in my more than thirty years as a policeman have I ever seen the public so aroused at a crime." "The most violent crime I have ever seen in my police experience."

Mass. 302, 308 (1924). *Berlandi* v. *Commonwealth,* *supra,* at 451-453. See *Chopelas* v. *Chopelas,* 303 Mass. 33, 35 (1939).

7. Finally, the petitioner challenges the single justice's finding that no crowd was present at his arraignment. Although certain newspaper photographs admitted in evidence at the hearing show crowds outside the District Court, the petitioner admitted in his testimony that he was not aware of seeing a crowd in the vicinity of the court house. Furthermore, if read literally, the single justice's finding refers to the fact that no crowd was present in the court room itself. This finding is clearly supported by the evidence and we will not disturb it. *Guerin* v. *Commonwealth,* 339 Mass. 731, 734 (1959).

*Exceptions overruled.*