COMMONWEALTH vs. LEO NOLIN.

Essex.   March 8, 1977. — July 7, 1977.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Practice, Criminal,* New trial, Assistance of counsel, Appeal, Fair trial.
*Constitutional Law,* Confrontation of witnesses.   *Evidence,* Common
criminal enterprise, Dying declaration.   *Identification.*

The record of a 1927 murder trial did not support the defendant's
claim that his court-appointed counsel's failure to appeal his con-
viction constituted ineffective assistance of counsel; although there
was no stenographic record of the defendant's trial, this court never-
theless reviewed the record prepared by the defendant from news-
paper accounts as if the case were being heard on appeal. [47-48]
Where a defendant in a murder trial did not move for a change in venue
or for a continuance because of extensive pre-trial and trial news-
paper publicity and he did not join in a codefendant's motion to
exclude jurors from certain municipalities nor in the codefendant's
motion for a mistrial, the defendant failed to prove he was denied a
fair trial by reason of prejudicial publicity. [48-49]
In the absence of any demonstration in the record of a 1927 murder
trial that the defendant challenged the admission of two coconspira-
tors' statements against him, there was no basis to conclude that
there was any error which could have supported a reversal of his
conviction. [49-50]
Evidence at a murder trial warranted a finding that the victim's hearsay
identification of the defendant was admissible as a dying declaration.
[50-51]
At a murder trial, there was no error in the admission of an out-of-
court identification of the defendant by the victim who was shown
only one photograph where the victim was seriously wounded and
near death and the defendant was still at large. [51]
In the record of a 1927 murder trial which consisted solely of news-
paper accounts of the trial, no error appeared in the judge's instruc-
tions to the jury. [51-52]
There was no merit in a claim by a defendant who was sentenced to
life imprisonment for second degree murder in 1927 that his con-
finement for fifty years constituted cruel and unusual punishment.
[52]

AMENDED MOTION for a new trial filed in the Superior
Court on November 24, 1975.

The proceeding was heard by *Donahue,* J.

The Supreme Judicial Court granted a request for di-
rect appellate review.

*Richard M. Riley (Thomas J. Valkevich & Albert S. Conlon* with him) for the defendant.

*John C. Doherty,* Assistant District Attorney, for the Commonwealth.

WILKINS, J.    Fifty years ago last May, Leo Nolin was indicted by an Essex County grand jury for the murder of William H. Griffin. Counsel was appointed for Nolin, and, on October 4, 1927, after a trial lasting fourteen trial days, Nolin was found guilty of murder in the second degree and sentenced to a mandatory term of imprisonment for life in the State prison at Charlestown. No appeal was taken from Nolin's conviction. Including his pre-trial detention, he has been incarcerated for more than fifty years.

In 1972, Nolin filed a motion for a new trial on which, for some unexplained reason, no action was taken. In October, 1975, counsel was appointed for Nolin who shortly thereafter presented an amended motion for a new trial. After almost half a century the preparation of a record on which to argue a motion for a new trial presented substantial problems. No stenographic record was available. However, newspaper accounts of the victim's death, of the search for and apprehension of Nolin and his companions, and of the trial are substantial. The daily proceedings at trial were reported in the Haverhill Gazette in significant detail, at times purporting to present verbatim accounts of the testimony. The judge who heard the motion for a new trial accepted newspaper articles as a partial record of the trial of the case. Although the newspaper stories are far more detailed than those customarily seen today, they do not purport to be a full record of the trial. In this circumstance, the extent of any prejudice to the defendant is often difficult to assess, even if one were to accept one or more of his claims that the trial judge erred in particular respects.

The motion judge concluded that the evidence against the defendant had been overwhelming, that he "received a fair trial even by today's more stringent standards," and that, if Nolin had appealed, he would not have been suc-

cessful in obtaining a new trial. Acting in his discretion under G. L. c. 278, § 29, the judge denied Nolin's amended motion for a new trial. We agree with each of these conclusions and affirm the denial of Nolin's amended motion for a new trial.

A motion for a new trial is addressed to the sound discretion of the lower court judge. *Commonwealth* v. *Gagne*, 367 Mass. 519, 526 (1975). If, however, "the original trial was infected with prejudicial constitutional error," the judge has no discretion to deny a new trial. *Earl* v. *Commonwealth*, 356 Mass. 181, 184 (1969). The motion judge did not focus specifically on whether Nolin claimed any error of constitutional dimensions, but we find no basis for valid objection to the motion judge's ruling because Nolin has not established any violation of his constitutional rights.

1. Nolin argues that he was denied his right to the effective assistance of counsel because his court-appointed counsel did not appeal his conviction. We accept, of course, the principle that Nolin, who was represented by court-appointed counsel rather than retained counsel, might have been entitled to counsel for his appeal, as a matter of constitutional right. See *Commonwealth* v. *Gauthier*, 361 Mass. 394, 399-400, cert. denied, 409 U.S. 869 (1972); *Douglas* v. *California*, 372 U.S. 353, reh. denied, 373 U.S. 905 (1963), made retroactive by *Smith* v. *Crouse*, 378 U.S. 584 (1964). However, the record is far from clear that Nolin can now succeed on any such claim. We might concede that it is likely that Nolin was indigent at the time of his conviction. However, there is no showing that Nolin wanted to appeal his conviction or that he did not know that he could obtain appellate review at public expense. The judge understandably made no findings concerning Nolin's intentions and knowledge of his rights following his conviction because no evidence was presented on these points. In an affidavit annexed to his amended motion, Nolin asserted that at all times he desired to and attempted to appeal. The lapse of forty-five years between Nolin's conviction and the filing of his first motion for a

new trial suggests that Nolin's assertions in his affidavit should not be accepted without question.

In this circumstance, we think that Nolin must take the consequences of the unavailability of a transcript of his trial, but we will review the record, as he has been able to prepare it, as if the case were being heard on appeal. The result will be that the standard we apply will be whether there was reversible error in Nolin's trial and conviction, rather than the lesser standard whether the motion judge abused his discretion in denying the amended motion for a new trial.

2. Nolin claims that he was denied his constitutional right to a fair trial because of extensive pre-trial and trial newspaper publicity. The record contains copies of newspaper articles in the Haverhill Gazette, published in March and April, 1927, concerning the victim's identification of a picture of Nolin, the search for Nolin, the victim's death, Nolin's arrest, his prior criminal record, the arrest of his companions Mary Cwikla and Herman Reed, their arraignment, and admissions made by Reed and Cwikla. A later article, dated June 15, 1927, stated that Reed made an offer through his counsel to plead guilty to manslaughter.

On September 19, 1927, the day the trial commenced, the Lawrence Tribune reported that Reed had moved for the exclusion of jurors from Haverhill, Groveland, Georgetown, and Bradford because of the June 15, 1927, newspaper story concerning Reed's alleged offer to plead guilty to a charge of manslaughter. The motion was denied. The Lawrence Tribune article repeated that portion of the June 15, 1927, Haverhill Gazette article which reported that Reed had offered to plead guilty to manslaughter. The next day Reed moved for a mistrial on the basis of the Lawrence Tribune article, but his motion was denied.

The jury were not sequestered. Some of the jurors came from the circulation areas of the Haverhill and Lawrence newspapers. In assessing the claim that Nolin was harmed by pre-trial publicity, we note that the jury found Reed not guilty.

The burden is on Nolin to establish that he was denied a fair trial by the pre-trial and trial publicity. *Delle Chiaie* v. *Commonwealth,* 367 Mass. 527, 532 (1975). *Commonwealth* v. *Gilday,* 367 Mass. 474, 491-492 (1975). *Murphy* v. *Florida,* 421 U.S. 794, 799-800 (1975). Here, Nolin did not move for a change in venue or for a continuance because of publicity. He did not join in Reed's motion to exclude jurors from certain municipalities nor in Reed's motion for a mistrial. Nolin made no challenge to any publicity during trial. The judge was not obliged to warn the jurors not to read newspapers (*Commonwealth* v. *Beneficial Fin. Co.,* 360 Mass. 188, 298-299 [1971], cert. denied sub nom. *Farrell* v. *Massachusetts,* 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts,* 407 U.S. 914 [1972]), but he did several times. There is, of course, no showing that any juror in fact did read any newspaper article. There was a special venire and many persons were excused from serving. The motion judge was correct in concluding that Nolin had failed to prove that he was denied a fair trial by reason of prejudicial newspaper publicity.

3. Prosecution witnesses were permitted to testify concerning extrajudicial statements inculpating Nolin made by Nolin's codefendants, Reed and Cwikla. Both Reed and Cwikla testified. Therefore, we are not dealing here with out-of-court statements of a codefendant, who did not testify, inculpating of another defendant. See *Bruton* v. *United States,* 391 U.S. 123 (1968), made retroactive by *Roberts* v. *Russell,* 392 U.S. 293 (1968). When the declarant takes the stand and is subject to cross-examination, a denial of the constitutional right of confrontation expressed in the *Bruton* case is not involved. *Nelson* v. *O'Neil,* 402 U.S. 622, 626-630 (1971). *California* v. *Green,* 399 U.S. 149, 164 (1970).

The contention which remains is Nolin's argument that various statements made by Reed and Cwikla should not have been admitted against him. Certainly, statements made by Reed and Cwikla could not qualify under the coconspirator's exception to the hearsay rule. These statements were made after the defendants had been arrested and, even if there had once been a conspiracy, the state-

ments were not made in furtherance of or in the course
of any joint enterprise. *Commonwealth* v. *White,* 370 Mass.
703, 710-711 (1976).

The newspaper accounts do not indicate that the trial
judge gave limiting instructions to the jury on each occa-
sion. He did give such an instruction when an affidavit of
Cwikla was read to the jury. He gave a limiting instruction
when statements of Cwikla were introduced for the pur-
poses of impeachment and again when Reed was cross-
examined concerning prior statements. It is impossible,
with the peculiar form of the record in this case, to deter-
mine whether the trial judge may have given limiting
instructions on other occasions, as he appears to have done
voluntarily in certain instances. In any event, the record
does not show that Nolin ever objected to the admission
of Reed's and Cwikla's statements for general purposes,
ever requested limiting instructions concerning those state-
ments, or even excepted to the trial judge's rulings. We
do know that Reed and Cwikla did testify to substantially
the same facts and were subject to cross-examination.

In the absence of any demonstration that Nolin chal-
lenged the admission of Reed's and Cwikla's statements,
we find no basis to conclude that there was any error
which could have supported a reversal of his conviction.

4. Nolin challenges the admission of evidence that the
victim identified Nolin in a photograph which was shown
to him in the hospital.

He argues first that the circumstances do not permit
the introduction of the victim's hearsay statement as a
dying declaration. The judge, who conducted a voir dire
on the admissibility of the identification, appears to have
given careful attention to the requirement for admissi-
bility that the victim must have believed that he had no
hope of recovery. See *Commonwealth* v. *Lacy,* 371 Mass.
363, 370 (1976); *Commonwealth* v. *Dunker,* 363 Mass.
792, 794 (1973). The evidence tends to show that on the
evening before he died, the victim identified Nolin at a
time when the victim was on an operating table after a
doctor had told him that he had no chance to live. The

judge instructed the jury that the victim's statement could be considered as evidence only if they found that, when the victim made the statement, he knew that he was dying and had no hope for recovery. The evidence was properly admitted as a dying declaration.

Nolin argues further that the identification procedure was constitutionally impermissible because a photograph of only Nolin was used in the identification procedure. Of course, a one-to-one confrontation, whether in person or by photograph, is disfavored. *Commonwealth* v. *Barnett,* 371 Mass. 87, 91-92 (1976), cert. denied, 429 U.S. 1049 (1977). *Simmons* v. *United States,* 390 U.S. 377, 383-384 (1968). See *Commonwealth* v. *Dickerson,* 372 Mass. 783, 790 (1977). Although the use of a single photograph has not alone generally been an adequate ground for exclusion of an identification (see *Nassar* v. *Vinzant,* 519 F.2d 798, 801 [1st Cir.], cert. denied, 423 U.S. 898 [1975]; Model Code of Pre-Arraignment Procedure § 160.2, Commentary at 440-441 [1975]), such a practice presents an element of suggestiveness which calls for a consideration of the entire circumstances of the identification procedure. *Manson* v. *Brathwaite,* 432 U.S. 98, 109-114 (1977). The identification may be shown nevertheless to be reliable. *Id.* Also, the circumstances may demonstrate a justification for the procedure, such as a need for prompt identification. *Commonwealth* v. *Chase* 372 Mass. 736, 743-744 (1977), and cases cited. Where the victim is seriously incapacitated in a hospital, a prompt one-to-one confrontation is generally permissible and may be imperative. *Commonwealth* v. *Barnett, supra* at 92. *Stovall* v. *Denno,* 388 U.S. 293, 302 (1967). Model Code of Pre-Arraignment Procedure § 160.5, Commentary at 450-451 (1975). Here, the victim was seriously wounded and near death, and the perpetrator of the crime was still at large. We find no due process violation in the circumstances.

5. We find no error in the judge's instructions to the jury. There was no occasion for an instruction that the jury could return a verdict of guilty of manslaughter. In

the absence of the entire charge to the jury, we are in no position to conclude that the judge improperly handled any matter in his jury instructions, and there is no showing that Nolin's counsel requested any particular instructions or objected to any instructions which were given. Such portions of the trial judge's one and one-half hour charge as appear in the Haverhill Gazette appear to be conscientious and fair.

6. Nolin claims that confinement for fifty years constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments to the Constitution of the United States. This issue is not one which can be raised on a motion for a new trial. In any event, a sentence of life imprisonment for conviction of murder in the second degree is not cruel and unusual punishment, nor, we add, would it be cruel or unusual punishment under art. 26 of the Declaration of Rights of the Constitution of the Commonwealth.

7. An appeal of a motion for a new trial is not an occasion for our consideration of the case under G. L. c. 278, § 33E. However, treating this proceeding as if it were an appeal, we see no occasion to order a new trial nor to order a reduction in the verdict. The evidence indicates that Nolin shot the victim, a storekeeper, in cold blood in the course of an attempt to rob him. We are impressed, as was the motion judge, with the apparent fairness with which the trial judge conducted Nolin's trial.

*Order denying the amended*
*motion for a new trial affirmed.*