COMMONWEALTH vs. EVERETT W. SIELICKI.

Essex. November 10, 1983. — March 12, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Practice, Criminal,* Assistance of counsel, Examination of jurors, Argument by counsel. *Evidence,* Photograph, Relevancy and materiality.

In the circumstances, the defendant in a murder case was not denied effective assistance of counsel by his attorney's failure to seek inquiry into the effect of pretrial publicity on potential jurors. [379-381]

At a murder trial, defense counsel's cross-examination of a State police lieutenant, by which it was revealed that the defendant chose to remain silent after his arrest, did not deprive the defendant of effective assistance of counsel. [381]

At the trial of a murder case, defense counsel's statement in his closing argument that "the defendant . . . actually knows what happened," did not deprive the defendant of effective assistance of counsel. [382]

At the trial of a murder case, the judge did not abuse his discretion in admitting in evidence certain photographs of the bodies of the victims, where the photographs were relevant to the issues of extreme atrocity or cruelty and of premeditation. [382]

INDICTMENT found and returned in the Superior Court Department on May 19, 1980.

The case was tried before *Brady,* J.

*Patricia A. O'Neill* for the defendant.

*Lila Heideman,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant appeals from his conviction of two counts of murder in the first degree, claiming that he was deprived of the effective assistance of counsel and that the trial judge abused his discretion by admitting in evidence repetitious gruesome photographs of the bodies of the victims. We affirm.

The jury could have found the following facts. During the morning of Sunday, April 20, 1980, the defendant, along with

Danny Keene, Paul Bowman, and Frank Cerasi, drove from Salisbury to Hampton, New Hampshire, in order for Keene to look at an automobile that his brother was interested in purchasing. In the presence of the others, the owner of the automobile told Keene that he had been arrested during a drug deal the previous week and that he suspected that Joey Salvatore had set him up. Keene stated that he would "take care of" Salvatore.

Later that morning, the defendant, Keene, and Bowman drove to the motel where Salvatore was staying. Keene was armed with a pistol. After some conversation in the motel room, Salvatore and his girl friend, Claire Goossens, left with the others, ostensibly to make a drug deal. The group drove to Rowley and walked to a hilltop in a wooded area. Bowman walked some distance from the others in order to relieve himself. He heard screams and, upon returning to the hilltop, saw Keene holding Salvatore and the defendant stabbing him. Keene then grabbed Goossens, and the defendant stabbed her. The defendant, Keene, and Bowman then left and took steps to dispose of the defendant's bloody clothes. After all three were arrested, Bowman agreed to testify against the defendant and became the Commonwealth's major witness.

The defendant claims that he was deprived of effective assistance of counsel by his attorney's failure to seek inquiry into the effect of pretrial publicity on potential jurors, by his elicitation, during cross-examination of the State police lieutenant in charge of the investigation, of the statement that the defendant had chosen to remain silent after his arrest, and by his statement during closing argument, that the defendant "actually knows what happened." We conclude that, in the specific circumstances of this case, the shortcomings of counsel's performance, considered individually and cumulatively, do not amount to the "serious incompetency" which must be shown in order to prevail on a deprivation of effective assistance claim. *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).

In order to prevail, the defendant must show that his attorney's conduct fell "measurably below that which might be expected from an ordinary fallible lawyer," *Commonwealth* v. *Saferian, supra,* and that "better work might have accomplished something material for the defense," *Commonwealth* v. *Satterfield,* 373

Mass. 109, 115 (1977). Trial tactics which, from the vantage point of hindsight, can be seen to have failed do not amount to ineffective assistance unless "manifestly unreasonable" when undertaken. *Commonwealth* v. *Levia,* 385 Mass. 345, 353-354 (1982). *Commonwealth* v. *Adams,* 374 Mass. 722, 728-729 (1978).

The defendant argues that defense counsel's failure to seek inquiry into the effect of pretrial publicity on potential jurors was a denial of effective assistance of counsel. We note first that the defendant has not established that newspaper accounts of his crime were read and remembered by any juror. See *Commonwealth* v. *Paszko, ante* 164, 194 (1984); *Commonwealth* v. *Nolin,* 373 Mass. 45, 49 (1977); *Delle Chiaie* v. *Commonwealth,* 367 Mass. 527, 532 (1975). However, even if we assume that the jurors read the articles, see *Commonwealth* v. *Crehan,* 345 Mass. 609, 613 (1963), no prejudice is shown.

Pretrial publicity is not per se prejudicial. *Delle Chiaie* v. *Commonwealth, supra.* Jurors need not be totally ignorant of the case they are to decide. *Commonwealth* v. *Jackson,* 388 Mass. 98, 108 (1983). *Commonwealth* v. *Richard,* 377 Mass. 64, 66 (1979). *Commonwealth* v. *Blackburn,* 354 Mass. 200, 204 (1968). *Commonwealth* v. *Subilosky,* 352 Mass. 153, 159-160 (1967). Virtually everything reported in the newspapers was later introduced in evidence at trial. See *Commonwealth* v. *Cameron,* 385 Mass. 660, 668 (1982); *Commonwealth* v. *Balakin,* 356 Mass. 547, 554 (1969). See also *Commonwealth* v. *Jackson, supra* at 109. Many of the articles did mention that the defendant had a prior criminal record, but this fact was not highlighted in the newspapers. Compare *Commonwealth* v. *Crehan, supra* at 612-613. The only misconduct specifically mentioned was assault and battery, digging clams in a contaminated area, and defaulting on court appearances. These are minor offenses as compared to the crime of which the defendant was convicted. Compare *Commonwealth* v. *Jackson,* 376 Mass. 790, 797-798 (1978). Juror knowledge of the defendant's prior criminal behavior is not necessarily prejudicial. See *Commonwealth* v. *Nolin, supra* at 48-49; *Commonwealth* v. *Eagan,* 357 Mass. 585, 588-589 (1970). Moreover, the publicity occurred in April and May; the

trial took place in October. "This lapse of time was sufficient for an inflamed public opinion, if such there was, to have subsided." *Commonwealth* v. *McLaughlin,* 352 Mass. 218, 225, cert. denied, 389 U.S. 916 (1967). Cf. *Delle Chiaie* v. *Commonwealth, supra* at 532 (publicity nine weeks before trial); *Commonwealth* v. *Scott,* 360 Mass. 695, 696-697 (1971) (publicity five months before trial); *Commonwealth* v. *Geagan,* 339 Mass. 487, 501 (publicity five months before trial), cert. denied, 361 U.S. 895 (1959).

The possible exposure to potentially prejudicial material was not such as to present a substantial risk that the case would be decided on extraneous grounds; even if pressed by counsel, the judge would not have been required to make inquiry under G. L. c. 234, § 28, second par. *Commonwealth* v. *Campbell,* 378 Mass. 680, 696 & n.12 (1979). See *Commonwealth* v. *Jackson,* 376 Mass. at 800 & n.5. Questioning of the venire beyond the requirements of § 28, first par., was a matter for the judge's discretion. *Commonwealth* v. *Ricard,* 355 Mass. 509, 510-511 (1969). *Commonwealth* v. *Nassar,* 354 Mass. 249, 253 (1968), cert. denied, 393 U.S. 1039 (1969); *Commonwealth* v. *Subilosky, supra* at 158. Even if the circumstances had been such that the judge would have been required, upon the request of counsel, to question the prospective jurors under § 28, second par., failure to make such a request would not be ineffective assistance unless it were a "manifestly unreasonable" strategy. See *Commonwealth* v. *Levia, supra* at 351-355. Of course, if counsel had requested inquiry as to exposure to pretrial publicity and its effect on prospective jurors, the wise exercise of the judge's discretion would have been to make such inquiry. See, e.g., *Commonwealth* v. *Bianco,* 388 Mass. 358, 368 (1983); *Commonwealth* v. *Jackson,* 388 Mass. at 109; *Commonwealth* v. *Estremera,* 383 Mass. 382, 391 (1981); *Commonwealth* v. *Richard, supra* at 66; *Commonwealth* v. *Gilday,* 367 Mass. 474, 491-492 (1975). Defense counsel did not seek such inquiry, perhaps because he preferred not to bring to the attention of the unsequestered jury possible sources of outside information. See *Commonwealth* v. *Beneficial Fin. Co.,* 360 Mass. 188, 296 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts,* 407 U.S. 910, and sub nom.

*Beneficial Fin. Co.* v. *Massachusetts,* 407 U.S. 914 (1972). We cannot say that counsel's decision was manifestly unreasonable. *Delle Chiaie* v. *Commonwealth,* 367 Mass. 527, 538-539 (1975). We find no indication in the totality of the circumstances that pretrial publicity rendered the defendant's trial fundamentally unfair. *Commonwealth* v. *Jackson,* 388 Mass. at 108-110.

The defendant next argues that defense counsel's cross-examination of the State police lieutenant in charge of the investigation, by which it was revealed that the defendant chose to remain silent after his arrest, was manifestly unreasonable. In making this argument, appellate counsel asks us to engage in speculation as to whether trial counsel reasonably should have known what the police lieutenant's response would be. This we decline to do. The form of the question posed by trial counsel strongly suggests that he anticipated the opposite response.[1] The defendant may have told trial counsel that he had denied his guilt. Appellate counsel argues that, because trial counsel was entitled under a discovery agreement to written or recorded statements of the defendant and any facts of an exculpatory nature known to the prosecutor, he could not have been unaware that the defendant had declined to make a statement. But a denial of guilt would not necessarily fall within either of these categories. On the record before us, we cannot conclude that trial counsel had reason to know that the defendant had made no statement. Thus, we do not reach the question whether counsel's conduct amounted to ineffective assistance if he knew or should have known. Nor do we determine whether, if counsel's conduct was error, it was, on the strength of the evidence against the defendant, harmless beyond a reasonable doubt. Compare *Commonwealth* v. *Cobb,* 374 Mass. 514, 516-522 (1978).

---

[1] The relevant portion of the colloquy between trial counsel and the police lieutenant was as follows:

DEFENSE COUNSEL: "Did you inquire of the defendant as to what happened?"
THE WITNESS: "Yes, sir."
DEFENSE COUNSEL: "And the defendant told you he didn't do it, didn't he?"
THE WITNESS: "He chose to remain silent."
DEFENSE COUNSEL: "Is that all he said — 'I choose to remain silent?'"
THE WITNESS: "No. He just said he didn't want to talk to us."
DEFENSE COUNSEL: "Didn't want to talk to you?"
THE WITNESS: "Yes."

The defendant's final claim as to denial of effective assistance of counsel is based on trial counsel's statement, in closing argument, that "the defendant . . . actually knows what happened." [2] Counsel's remark was indisputably inept, but, considered in context, it does not rise to the level of ineffective assistance. The defense was not predicated upon mistaken identity or alibi; there was overwhelming evidence that the defendant was at the scene. Rather, the defense effort was directed at creating a reasonable doubt as to the veracity of Bowman's testimony by probing for inconsistencies and by suggesting that Bowman had reason to dislike Salvatore and to want to protect Keene. Counsel's statement had no tendency to undermine this defense. The defendant was not left "denuded of a defense." *Commonwealth* v. *Street,* 388 Mass. 281, 287 (1983). If emphasized, counsel's statement might have reinforced "the jurors' natural tendency to infer guilt from a failure to deny guilt." *Commonwealth* v. *Cobb, supra* at 520. We are satisfied, however, that "the brief, indeed fleeting, nature" of the comment prevented it from having prejudicial impact. *Commonwealth* v. *Storey,* 378 Mass. 312, 324 (1979), cert. denied, 446 U.S. 955 (1980).

The defendant's final argument is that the admission in evidence of multiple preautopsy photographs of the bodies of the victims was an abuse of discretion. The judge conducted a voir dire and excluded certain photographs as cumulative and possibly prejudicial. He found the admitted photographs relevant to extreme atrocity or cruelty and to premeditation, both of which were in issue. We have examined the photographs and we agree that their probative value outweighed their prejudicial effect. There was no abuse of discretion. See, e.g., *Commonwealth* v. *Westmoreland,* 388 Mass. 269, 279 (1983).

---

[2] Counsel's statement was made in the context of the following paragraph: "Now, at the outset, on Monday night, [the prosecutor] was there and interviewed the people that were present. And at some time [he] chose to believe what Mr. Bowman said. And so Mr. Bowman was here as a witness, not sitting right over here today, will not be present today; and is the only one, outside of Mr. Keene, who is not sitting here today, and *the defendant* who *actually knows what happened.* And at this point I would like to talk about Mr. Bowman's testimony; and, at the same time, the things that he told to Mr. Cerasi, what he told the police, and what he told others." (Emphasis supplied.)

We have reviewed the whole case on the law and the evidence and find no occasion to exercise our power under G. L. c. 278, § 33E, to order a new trial or to reduce the degree of guilt.

*Judgments affirmed.*