A District Court jury found the defendant, Jane E. Osinski, guilty of operating a motor vehicle while under the influence of alcohol, G. L. c. 90, § 24 (1) (a ) (1), and the defendant thereafter pleaded guilty to the portion of the complaint alleging a second offense. The jury also found the defendant guilty of failing to stop for a police officer, G. L. c. 90, § 25. On appeal, the defendant argues that the trial judge erred in denying her motion for a required finding of not guilty on the charge of failure to stop, and in denying her motion for a new trial based on her claim of ineffective assistance of counsel.[2] We affirm.
Background. The jury could have found the following facts. On April 27, 2014, the defendant, a real estate agent, was showing a home on the grounds of the Andover Country Club, at 5 Trevino Circle. The defendant's coworker was showing a condominium on the same grounds and observed that the defendant had difficulty keeping her balance, staggered side to side, and had a dazed expression on her face. The defendant went to her car, retrieved a bag that she had borrowed from the coworker, and returned it to her, and the coworker noticed that the bag had an odor of alcohol, which it did not have when she loaned it to the defendant.
When the defendant left 5 Trevino Circle in her car, the coworker called the Andover police department because she was worried about the defendant's condition and that she was driving a car, and believed the defendant was intoxicated. The coworker described the defendant's vehicle as a brownish 2014 Toyota Rav4.
Following the coworker's call, a police officer was dispatched to the area. The officer identified the defendant's vehicle on Route 133, turned his cruiser around, and followed the defendant onto Route 28 north, where he activated his cruiser's blue lights. The officer testified that when he turned the lights on just behind the defendant, the defendant continued driving. After following the defendant's vehicle for a few hundred feet, the officer turned on the cruiser's siren. The defendant proceeded at a "normal" rate of speed for approximately another three-tenths of a mile before coming to a stop. When the officer approached the driver's side window of the defendant's vehicle, he noticed an odor of alcohol and that the defendant's eyes were glassy. The defendant failed a number of field sobriety tests. The officer then formed the opinion that the defendant was impaired and placed her under arrest. An inventory search of the vehicle pursuant to police department policy revealed a "basically empty" vodka bottle. The defendant's former boy friend testified that the defendant was bringing the bottle to his home at the time of the incident. The defendant testified that it was not her bottle and that she did not drink vodka.
Prior to trial, the parties stipulated that the defendant was participating in alcohol testing twice weekly arising from an unrelated civil matter. Dr. Harvey Cohen testified as an expert in the biomarker ethyl glucuronide (EtG), a chemical that can be detected in a person's urine and can be used to detect the presence or absence of alcohol in a person's system in the past twenty-four hours. Dr. Cohen testified that based on a test the defendant took on April 28, 2014 -- the day after her arrest -- he did not believe that there was alcohol present in her system.
Discussion. 1. Motion for required finding of not guilty. The defendant claims that the trial judge erred in denying her motion for a required finding of not guilty, because there was insufficient evidence that she had failed to stop for the police officer. In reviewing the denial of a motion for a required finding of not guilty, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).
General Laws c. 90, § 25, provides that a failure to stop occurs when "[a]ny person who, while operating or in charge of a motor vehicle, ... refuse[s] or neglect[s] to stop when signalled to stop by any police officer who is in uniform or who displays his badge conspicuously on the outside of his outer coat or garment." Here, there was sufficient evidence that the defendant failed to stop for the officer. The defendant continued driving for "a few hundred feet" after the officer turned on his cruiser's lights, and then continued to drive at a "normal" speed for approximately three-tenths of a mile after the officer turned on the siren. Based on those facts, the jury reasonably could have found that the defendant failed to stop for the officer. Latimore, 378 Mass. at 677. Consequently, the judge did not err in denying the defendant's motion for a required finding of not guilty.
2. Motion for new trial. The defendant argues that the judge erred in denying her motion for a new trial. The defendant asserts that her trial counsel was ineffective because he undermined the defendant's credibility by offering Dr. Cohen's scientific and expert testimony despite its weaknesses, and because counsel stipulated to evidence that created the impression that the defendant was an alcoholic.
We review an ineffective assistance of counsel claim to determine whether there has been "serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). "Trial tactics which may appear questionable from the vantage point of hindsight, do not amount to ineffective assistance unless 'manifestly unreasonable' when undertaken." Commonwealth v. Haley, 413 Mass. 770, 777-778 (1992), quoting Commonwealth v. Sielicki, 391 Mass. 377, 379 (1984). Where a defendant raises ineffective assistance of counsel in the context of a motion for new trial, appellate courts accord substantial deference to the judge's favorable evaluation of trial counsel's performance, particularly where, as here, the motion judge was also the trial judge. Commonwealth v. Barnette, 45 Mass. App. Ct. 486, 493 (1998). We will not reverse the decision to deny a motion for a new trial "unless it is manifestly unjust, or unless the trial was infected with prejudicial constitutional error." Commonwealth v. Nieves, 429 Mass. 763, 770 (1999).
a. EtG test expert testimony. The defendant argues that trial counsel undermined her credibility by offering unreliable expert testimony related to the EtG testing. The defendant posited in her posttrial affidavit that she "did not want Dr. Cohen to testify at trial because of the way he had been cross-examined" at the Daubert-Lanigan hearing. Specifically, the defendant now argues that counsel should have known that the testimony would hurt the defendant's credibility because validity testing had not been done on the defendant's urine sample.[3] Similarly, the defendant argues that trial counsel knew from the Daubert-Lanigan hearing that the Commonwealth would attack Dr. Cohen's credibility by highlighting the fact that Dr. Cohen had never administered an EtG test.
Trial counsel's decision to have Dr. Cohen testify was not "manifestly unreasonable," Sielicki, 391 Mass. at 379, as the existence of a negative screen for alcohol was relevant to the charges. At the Daubert-Lanigan hearing, trial counsel successfully moved to have Dr. Cohen's testimony admitted at trial, arguing that the testing method that Dr. Cohen would discuss was "accepted within the relevant scientific community," and emphasizing that including the test results would enhance the defendant's credibility.[4] Moreover, trial counsel's testimony at the hearing on the motion for new trial makes clear that his decision to call Dr. Cohen as a witness was in fact integral to the defense strategy.[5] The judge was free to reject the defendant's self-serving affidavit, submitted in support of her new trial motion, that she did not want Dr. Cohen to testify, particularly in light of trial counsel's testimony at the hearing on that motion about the defendant's strong desire to include information about the EtG testing in her defense.[6] See Commonwealth v. Grant, 426 Mass. 667, 673 (1998) (noting judge has "right to reject as not credible the defendant's self-serving, conclusory affidavit").
b. Alcohol testing stipulation. The defendant contends that trial counsel's decision to stipulate that she was "participating in twice-weekly testing for alcohol arising from an unrelated civil matter" prejudiced her by creating the impression that she was an alcoholic. There is ample evidence that this was a strategic decision designed to eliminate any jury speculation about why the defendant "ran out" to get an alcohol screening test.[7] Moreover, the defendant herself testified that she took the test in connection with an unrelated Probate and Family Court matter, and noted that she does not drink alcohol because of this testing program. The judge found, and we agree, that the behavior of trial counsel did not "fall[ ] measurably below that which might be expected from an ordinary fallible lawyer" by offering this evidence. Saferian, 366 Mass. at 96.[8] ,[9]
Judgments affirmed.
Order denying motion for new trial affirmed.

The defendant's direct appeal and her appeal from the order denying her motion for new trial were consolidated in this court.

At a hearing to address the defendant's motion to continue the trial date -- conducted prior to the Daubert-Lanigan hearing -- defense counsel explained that the defendant had been going through a "heated divorce" for the past year and one-half, and that as "[p]art of that, she was required to do random drug and alcohol testing." Defense counsel represented that the defendant underwent an EtG test (which tests for enzymes coming from the liver) the day after her arrest in this case, thus, the defendant wanted the test to prove she had not been drinking the day before. Defense counsel agreed with the judge's characterization of such a test as "clearly exculpatory evidence."

At the Daubert-Lanigan hearing trial counsel explained that the EtG test result and the expert's testimony would demonstrate that the defendant did not simply "run out on her own [to take the test] to try and see if she could beat what was being alleged by officers."

As the Commonwealth correctly notes, trial counsel testified at the hearing on the motion for new trial that he was aware there had been no validity testing prior to trial, but he had conferred with Dr. Cohen about the issue prior to the trial. Moreover, trial counsel was "very confident with [Dr. Cohen's] ... professional qualifications, and his testimony," and in fact thought that Dr. Cohen's testimony "was the strongest part of [the] defense." Trial counsel also thought that Dr. Cohen "handled everything very, very well" and that Dr. Cohen was "comfortable with the process" involved in EtG testing.

Significantly, at the new trial motion hearing, trial counsel testified that the defendant was "very, very assertive" about including testimony regarding the EtG testing.

At the hearing on the motion for new trial, the defendant's trial counsel explained that by stipulating to the weekly testing through the Probate and Family Court, he was hoping to "give some validity to the jury of the test," and to show that the test was "not something [the defendant] would have run out to the local CVS" to get. Trial counsel also explained that while he "thought about" whether the stipulation would prejudice the defendant, he ultimately decided "as a tactical decision ... that it was really important that [the jury] hear that this was being done."

Moreover, when the judge instructed the jury about the stipulation, the defendant did not object or request further limiting instructions.

In his findings (dictated at the conclusion of the hearing), the judge found that "trial counsel for the defendant was highly effective." As to counsel's presentation through Dr. Cohen of the EtG test results, and his agreement to the stipulation that the defendant was participating in alcohol testing twice weekly arising from an unrelated civil matter, the judge found that trial counsel "put negative [test] results before the jury in support of the defendant's testimony at trial that she did not consume any alcohol before she was arrested," and reiterated that defense counsel was "extremely effective in representing the defendant." Finally, the judge concluded that the arresting officers and other witnesses "offered the jury overwhelming evidence that the defendant was under the influence of alcohol when she was operating her motor vehicle."