COMMONWEALTH *vs.* PAUL N. SMITH.

Plymouth.    December 4, 1967. — January 4, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, &
REARDON, JJ.

*Insanity. Practice, Criminal,* New trial, Capital case.

Where, in a criminal case tried before the decision of this court in *Commonwealth* v. *McHoul,* 352 Mass. 544, it appeared that the defence was insanity, that an expert witness for the defendant testified that by reason of schizophrenia he had "an irresistible impulse" to commit the crime charged, that opinion testimony by an expert witness for the Commonwealth rested on a distinction, later rejected in the *McHoul* case, between irresistible impulse and lack of substantial capacity to control conduct, and that had the case been tried in the light of the *McHoul* case the medical opinion might likely have been unanimous that the defendant was not criminally responsible, it was held that justice required a new trial following a verdict of guilty.

FOUR INDICTMENTS found and returned in the Superior Court on September 21, 1965.

The cases were tried in the Superior Court before *Vallely,* J., in March, 1966.

*Edward H. Stevens* for the defendant.

*Robert L. Anderson,* Assistant District Attorney, for the Commonwealth.

WHITTEMORE, J.    The defendant has appealed from his conviction in the Superior Court on four indictments respectively charging him with murder in the first degree, kidnapping, the commission of an unnatural and lascivious act with a child under sixteen years of age and indecent assault and battery on a child under the age of fourteen. The crimes were allegedly committed on July 29, 1965. The three indictments other than that for murder were ordered placed on file and the defendant recognizes that the appeal in respect of these indictments brings nothing before us. *Commonwealth* v. *Locke,* 338 Mass. 682, 684. The jury did

not recommend that the sentence of death be not imposed. G. L. c. 265, § 2.

A principal issue was the criminal responsibility of the defendant for the shocking and revolting acts shown in the evidence. The defendant contends that on the evidence a verdict should have been directed for him on the ground of insanity. He contends also that his motion for a new trial should have been allowed as the weight of the evidence shows that he was insane.

An expert called by the defendant testified that the defendant was afflicted with schizophrenia and "had an irresistible impulse to sexually molest and to kill a young girl." An expert called by the Commonwealth testified that in his opinion the defendant did not act under irresistible impulse. On cross-examination he testified that the crime, allegedly committed by the defendant, was, he felt, "very definitely . . . a product of this mental disease" (which he had described). In his opinion the defendant "is not of substantial capacity to control his behavior." Asked as to the effect of the mental disease on the defendant's ability on July 29, 1965, to control his impulse to sexually violate or to kill, the witness answered, "I certainly feel that his mental illness played a substantial part in reducing his capacity to control his behavior. I do not believe it completely obliterated or stopped his ability to control his behavior." The history indicated that "while his impulses to kill have existed for many years . . . he had always been able previously to resist these, and again always on the basis of the presence of some other individual." He "would avoid . . . [giving way to his impulses] if he felt there was any such chance of being apprehended. For this reason I felt very clearly that the defendant had ample control of his impulses."

It is inescapable on this record that the testimony of the witness for the Commonwealth was dependent on his making a distinction between irresistible impulse and lack of substantial capacity to control, a distinction which we have rejected in *Commonwealth* v. *McHoul*, 352 Mass. 544,

553–555. In that case we held that the test of the American Law Institute's Model Penal Code, Proposed Official Draft (1962) § 4.01, restates our rule (*Commonwealth* v. *Rogers*, 7 Met. 500, 501–502) in "clearer and more understandable words."[1] In the *McHoul* case we said, "We think our test *as applied* has been in all likelihood, in most cases, a 'substantial capacity' test. . . . The Code intends that 'a defendant will not be convicted . . . if mental illness has deprived him of effective power to make the right choices' . . . . Such is the precise intent of our test, expressed in terms of capacity."

There was no legal error in this case. *Commonwealth* v. *Cox*, 327 Mass. 609, 613–615. *McHoul* case, *supra*. The jury could disregard all the expert opinion. But on this record there is shown the possibility, if not the probability, that had our construction of the *Rogers* rule been already declared, as it later was in the *McHoul* opinion, there would have been, as in the *Cox* case, "unanimous medical opinion" (327 Mass. at 615) that the defendant was not criminally responsible.[2] This we deem in justice to require a new trial.

As it appears that a retrial will not take place for two years or more after the trial of March, 1966, we do not consider whether the defendant's motion for change of venue should have been granted. See *Commonwealth* v. *Bonomi*, 335 Mass. 327, 333. We note, however, that the considerable pre-trial publicity in Plymouth County including the newspaper publication of serious admissions of the defendant with an account of his reënactment of the crime and a

---

[1] The Code states (§ 4.01 [1]): "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law."

[2] How the testimony would have stood if there had been full direct and cross-examination in the light of the *McHoul* case construction is of course not certain. The Commonwealth's expert testified, inter alia, that the defendant's affliction was a combination of a "sociopathic personality disorder with sexual deviation" and "a concurrent schizophrenic reaction of the chronic undifferentiated type." He deemed the sexual drive itself as sociopathic or criminal but "the choice of object, the excitement by the blood . . . certainly part of his mental illness."

photograph of the defendant with the subcaption, "Accused murderer . . . shown in the Lakeville area where he re-enacted for police the slaying of 5-year-old Ellen Gamache of Middleboro," risked a finding that the guilt of the defendant had been "substantially prejudged by the residents of the county." *Ibid.* The responsibility to guard against prejudicial pre-trial publicity is particularly serious in a first degree murder case because of the double function of the jury both to determine guilt or innocence and to recommend as to the death penalty.

*Judgment reversed.*
*Verdict set aside.*