COMMONWEALTH *vs.* ROBERT J. BLACKBURN.

Essex.    April 1, 1968. — May 2, 1968.

Present: WILKINS, C.J., WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*Search and Seizure.    Arrest.    Identification.    Constitutional Law,* Due process of law.    *Practice, Criminal,* Fair trial, Continuance, Venue. *Jury and Jurors.    Robbery.*

Where it appeared in a criminal proceeding that police stopped an automobile in which the defendant and others were riding, ordered them to get out and arrested them, and thereupon observed revolvers in the automobile, and that the automobile was taken into police custody and driven to a police station and the revolvers were there removed from the automobile after a search warrant for it had been obtained, it was held that in effect the search for and seizure of the revolvers occurred at the time of the arrest, that the search warrant was unneces-

sary, that any defect in the application therefor was immaterial, and that there was no error in denial of a motion by the defendant to suppress the revolvers as evidence. [202-203]

Police officers, who, shortly after a robbery, received by police radio descriptions of three robbers and of an automobile in which they had escaped from the place of the robbery, and who saw and stopped an automobile answering the description given them and containing three occupants and some revolvers, had probable cause to arrest the occupants then and there. [203]

There was no merit in a contention by the defendant in a robbery case that he was denied due process of law contrary to the Fourteenth Amendment of the Federal Constitution by permitting victims of the robbery to identify him and companions of his at a police station without the use of a lineup, where in the circumstances the identification was only a confirmation of strong evidence implicating the defendant and his companions as the robbers. [203]

The record in a robbery case, from which it appeared that the defendant was satisfied with the jurors chosen and did not exhaust his peremptory challenges, did not show that publicity precluded a fair trial in the county where the robbery was committed or that there was error in denial of a motion for a continuance and change of venue. [203-204]

Sequestration of witnesses at a criminal trial lies in the discretion of the judge. [205]

Substantial risk of a miscarriage of justice calling for a new trial did not appear in an armed robbery case by reason of the fact that in the charge, as to which the defendant's counsel made no comment and took no exception, the judge said that an "armed robbery can or need not be with the use of a dangerous weapon." [205]

EIGHT INDICTMENTS found and returned in the Superior Court on September 15, 1966.

Certain motions were heard by *Coddaire*, J., and the cases were tried before him.

*Reuben Goodman* (*Richard O. Johnson* with him) for the defendant.

*John J. Jennings*, Assistant District Attorney, for the Commonwealth.

WHITTEMORE, J. The defendant appeals under G. L. c. 278, §§ 33A–33G, from his conviction on eight indictments charging him and two others with armed robbery of two persons, entry of dwelling and assault with intent to rob, and related offences.

1. After an entry and robbery, three robbers left the Marblehead home of John Rimer about 7:45 P.M. on July 10, 1966, in an automobile. Rimer, though trussed with seven

other victims, escaped his bonds and telephoned the police. About 8:15 P.M. an officer obtained descriptions of the robbers and the escape car. This was broadcast over the intercity radio at 8:17 P.M. and was heard and rebroadcast in Lynn. Officer Queena heard the broadcast, went to the Lynnway, saw a car answering the description, followed it, and used his two-way radio to ask for and receive a confirmation of the description, that is, three armed men in a late model white Pontiac with a black top bearing a Michigan registration. He and Corporal Delaney of the Massachusetts State Police stopped the car, ordered the occupants to get out, and arrested the three including the defendant. Officer Queena at the time saw a gun protruding from under the front seat. Corporal Delaney saw the muzzle of a revolver in the same place. The judge on a motion to suppress found that the corporal leaned into the vehicle, looked under the seat, and saw a forty-five calibre revolver and a thirty-eight calibre weapon. The vehicle was driven to the police station. A search warrant for the vehicle was obtained. The guns were taken from the car about 9:05 P.M.

The motion to suppress the weapons as evidence was denied. There was no error. The car and its contents were taken into police custody at the time of the arrest. The effective search was made at the time of the arrest; the guns were then discovered and, in effect, seized. The guns were as much in the possession of the police as would have been the case had they then been removed from the car. *Price* v. *United States*, 348 F. 2d 68 (Ct. App. D. C.), cert. den. 382 U. S. 888. *Hiet* v. *United States*, 372 F. 2d 911 (Ct. App. D. C.). See *Rodgers* v. *United States*, 362 F. 2d 358, 362 (8th Cir.), cert. den. 385 U. S. 993; *Trotter* v. *Stephens*, 241 F. Supp. 33, 41–42 (E. D. Ark.), cert. den. sub nom. *Trotter* v. *Bishop*, 386 U. S. 964. Compare *Preston* v. *United States*, 376 U. S. 364 (items seized not seen at time of arrest; later search without warrant too remote in time or place). See for discussion of the rule of the *Preston* case *Cooper* v. *California*, 386 U. S. 58, 59–62. The extent if any of the power to seize or sequester the car is not in issue.

The search warrant was an unnecessary, but understandable, precaution. This being so, it is immaterial that there was a defect in the application for the warrant, in not disclosing the nature of the information ("Information received from Officer William Quigly and my own personal knowledge"). As to the defect, see *Commonwealth* v. *Mitchell*, 350 Mass. 459, 462; *Commonwealth* v. *Penta*, 352 Mass. 271, 274–275.

There was no doubt of the right to arrest. There was probable cause in the information received by radio; additionally, the possession of the guns in the car by its occupants was a felony committed in the officers' presence. G. L. c. 269, § 10; c. 274, § 1.

2. The defendant contends that it was error to permit two of the victims on the evening of the robbery to identify him and his companions at the police station without the use of a lineup.

The point that counsel was not present is not open in view of the holding of *Stovall* v. *Denno, Warden*, 388 U. S. 293, 296, that the rule of *United States* v. *Wade*, 388 U. S. 218, and *Gilbert* v. *California*, 388 U. S. 263, applies only to confrontations conducted after June 12, 1967. As to the further point under the Fourteenth Amendment, there is, we think, no basis for concluding that the "confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification" that the defendant was denied due process of law (388 U. S. at 301–302). The two witnesses, as their testimony shows, had had full opportunity to view the three robbers earlier that evening. The prompt capture in the carefully observed and described getaway car of three men (answering the general description given by the victims) makes it unlikely that those captured were other than the robbers. In the circumstances, identification was only a confirmation of strong evidence implicating these men. It was added assurance that notwithstanding appearances, nonparticipants had not been arrested.

3. It was not error to deny the motion for a continuance and change of venue. *Commonwealth* v. *Nassar*, 351 Mass.

37, 40–41. The pre-trial publicity in July, 1966, the reporting of the probable cause hearing on August 10, the reporting of the beginning of trial on October 5, 1966, and of the argument to suppress, as well as of the suppression of evidence as to three defendants who were freed, and the guilty pleas of the defendant's two companions did not require the conclusion that there was a reasonable likelihood that a fair trial could not be had.

There was nothing so shocking and repellant in the crime or the circumstances as to suggest that community opinion might be set against the persons accused. Compare *Commonwealth* v. *Smith*, 353 Mass. 487, 489–490.

The motion was denied before trial began but the transcript of the proceedings for the selection of the jury tends strongly to confirm that any prospective juror who the defendant had any reason to fear had any possible prejudice was excused. He did not exhaust his peremptory challenges. He indicated his satisfaction with the jurors chosen.[1]

Obviously it is not necessary in the interests of a fair trial that all citizens who have read of or been interested in a crime be excluded from the jury or that the trial take place where few such citizens will be found. Intelligent persons read and take an interest in events; because of the same endowments they are likely to give due regard to the evidence and to disregard rumor, report, and suspicion when in the solemnity of a court room a defendant is tried and his reputation and his liberty or his life are at stake. See *Commonwealth* v. *Subilosky*, 352 Mass. 153, 157–161;

---

[1] As to the jurors who answered in the negative and without qualification the judge's general questions as to possible prejudice from publicity, the defendant stated in every case but one: "The defendant is satisfied." In the one instance he exercised a peremptory challenge. As to the one juror who answered that he had read about the case, had seen what it was about and that what he had read would not prevent his forming an impartial judgment, the defendant also stated that he was satisfied. The defendant's counsel stated in respect of one juror that in the past he had represented clients to the contrary of the juror's interests but he believed the juror "could render a fair judgment on behalf of the defendant." The juror was accepted. The defendant stated satisfaction with juror No. 12 who had read "the number, 75 thousand, or something . . . [as to] that holdup there," and otherwise in the negative to the questions. Two other jurors who gave qualified or not clear answers were challenged by the defendant.

*Geagan* v. *Gavin,* 292 F. 2d 244, 247–249 (1st Cir.), cert. den. 370 U. S. 903. The trial judge should and does have substantial discretion in the premises.

4. It was within the judge's discretion to deny the motion to sequester witnesses. *Commonwealth* v. *Thompson,* 159 Mass. 56, 58. *Zambarano* v. *Massachusetts Turnpike Authy.* 350 Mass. 485, 487. No special reason for such action was stated to the judge. We do not overlook the advantage of this expedient, particularly in cases where the evidence may be involved or conflicting. See Wigmore on Evidence (3d ed.) §§ 1838, 1839. But the decision under our rule is left to the trial judge.

5. The defendant took no exception to the judge's charge. We see no basis in the sentence in the charge referred to by the defendant for exercising our extraordinary power to order a new trial to avoid the substantial risk of a miscarriage of justice. Compare *Commonwealth* v. *Freeman,* 352 Mass. 556, 563–564. It is a true statement, although possibly obscure, that "[a]n armed robbery can or need not be with the use of a dangerous weapon." The gist of the charge is committing a robbery while armed. "It is not necessary to show the use of a dangerous weapon in proving the offence." *Commonwealth* v. *Nickologines,* 322 Mass. 274, 277. The jury found the defendant guilty of carrying a revolver on his person and of assaulting with attempt to rob, "being armed." That defendant's counsel made no comment at the end of the charge does not suggest oversight as now argued, but rather recognition that nothing had been said which in the defendant's interest required correction.

*Judgments affirmed.*