COMMONWEALTH vs. HARRY T. SPIKES.

Plymouth. October 4, 1971. — November 9, 1971.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Search and Seizure. Evidence, Competency.*

Where police, after observing in the driveway of a house an automobile which matched the description of a vehicle seen forty-five minutes before at the scene of an armed robbery in which a police officer was shot by the holdup man, examined three open trash barrels and seized various items from one of them, including a revolver similar to one taken from the officer at the robbery, another revolver, and a set of car keys that fit the automobile, the seizure was not the product of an illegal search where, besides the fact that the trash barrel was open, it appeared that the police were confronted with an emergency situation in which their own safety was at stake since the weapons might have been used against them in an escape attempt. |442|

It was not irrelevant at a trial for armed robbery for a police officer to testify on redirect examination about the length of his hospitalization after he was wounded in the robbery where evidence of the officer's hospitalization was first introduced by the defence on cross-examination to show that the officer had not seen the defendant in the period between his hospital stay and the trial. |442–443|

INDICTMENTS found and returned in the Superior Court on January 17, 1969.

The cases were tried before *Hudson, J.*       •

*Robert V. Greco* for the defendant.

*Robert L. Anderson,* District Attorney, for the Commonwealth.

REARDON, J. The defendant appeals in cases tried subject to G. L. c. 278, §§ 33A–33G. He was convicted of charges of assault with intent to murder, armed robbery, and assault and battery with a dangerous weapon. The cases arise out of a late evening holdup at the Western Union office in Brockton where a police officer, appearing on the scene and armed with a .38 caliber revolver, was shot by the holdup

man. Two assignments of error are argued by the defendant.

1. The first assignment questions the legality of a search resulting in the recovery of a .45 caliber revolver, a .38 caliber revolver, a set of car keys, a pair of gloves, and a sweater and a scarf, all of which were found at 478 East Street, Brockton, about forty-five minutes after the robbery. Some Brockton police detectives had gone to that address and noticed a white 1966 Chevrolet station wagon parked in the driveway. (A white Chevrolet station wagon had been observed in the vicinity of the robbery.) The car's engine was still warm. One of the detectives flashed his light into three trash barrels outside the house and in one of the barrels, a round plastic type, he found the items in question. The keys which he removed fit the station wagon. The .38 caliber revolver was of a type which was general issue to the Brockton police. The wounded policeman's revolver had been taken from him by the holdup man at the scene of the crime before he left. The defendant was apprehended at 478 East Street shortly after the discovery of the guns and the clothing. We see no merit in the defendant's contention that the seizure of these articles resulted from an illegal search. The trash barrel was open, and the police were on the premises to apprehend an individual who had already given evidence that he would use a gun. The police were confronted with an emergency in which their own safety was at stake. See *Commonwealth* v. *Blackburn*, 354 Mass. 200, 202; *Chimel* v. *California*, 395 U. S. 752, 761–763.

It was eminently sound police practice to move speedily and insure control of all weapons which might be used against the searching officers in an escape attempt. *Warden* v. *Hayden*, 387 U. S. 294, 298–300. The argument that police officers in these circumstances should have left these guns alone does not commend itself to us.

2. There is no merit in the second assignment of error raised by the defendant. He contends that it was irrelevant for the police officer who was wounded to testify that he was

confined in the hospital for six weeks. The police officer did not testify to this on direct examination. The evidence of the officer's hospitalization was initially raised by the defendant on cross-examination, and the objective of this was to show that the officer had not seen the defendant in the period between his hospital stay and the trial.

*Judgments affirmed.*