COMMONWEALTH VS. PAUL N. SMITH.

Plymouth. March 2, 1998. - April 13, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, FRIED, MARSHALL, & IRELAND, JJ.

*Practice, Criminal,* Instructions to jury, Reasonable doubt, New trial, Capital case, Assistance of counsel. *Constitutional Law,* Assistance of counsel.

This court addressed the arguments of a criminal defendant raised in a motion for a new trial, where the law on the issues had not been sufficiently developed at the time of the defendant's direct appeal such that he was bound to raise them at that time or have them considered as waived. [247-249]

At the trial of a murder case in 1968, there was no reversible error in the judge's instructions on the Commonwealth's burden of proof beyond a reasonable doubt [249-251], and the instructions viewed as a whole correctly conveyed to the jury the level of proof required to convict the defendant [251-254].

A criminal defendant did not demonstrate that his trial attorney was incompetent in 1968 when he failed to raise the issue of the judge's premature *Tuey* charge, which was first criticized by this court in *Commonwealth* v. *Rodriquez,* 364 Mass. 87 (1973); nor was the *Tuey* charge so coercive that the failure of counsel to have objected was any indication of incompetence. [256-258]

INDICTMENT found and returned in the Superior Court on September 21, 1965.

After review by this court, 357 Mass. 168 (1970), a motion for a new trial, filed on September 14, 1996, was heard by *John A. Tierney,* J.

*Roger A. Cox* for the defendant.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

MARSHALL, J. On July 29, 1965, a five year old girl residing in Middleboro was brutally sexually assaulted and murdered. The defendant was indicted on a charge of murder in the first degree and, in circumstances that we shall describe, ultimately found guilty by a jury in April, 1968. Thirty years later, the defendant makes three requests: that we reevaluate the judge's charge on

reasonable doubt in light of changes in the law since his conviction; that we consider whether the jurors were coerced into reaching their decision because the judge gave a premature and unrequested charge like the one given in *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851); and that we consider whether the defendant received effective assistance of counsel. We conclude that the defendant is not entitled to a new trial.

We need not recite the facts as the jury could have found them, for we have done so previously. See *Commonwealth* v. *Smith*, 357 Mass. 168, 169-171 (1970) (*Smith II*). Suffice it to say that the Commonwealth's version of the facts was powerful, and on his direct appeal the defendant did not contend that there was error in the denial of his motions that requested directed verdicts of not guilty "on the evidence generally." *Id.* at 176. Rather, the critical issue for the jury was the mental capacity of the defendant as bearing on his criminal responsibility, as we had then recently elaborated the meaning of that concept in *Commonwealth* v. *McHoul*, 352 Mass. 544, 553-555 (1967). *Smith II, supra* at 177. We recite in greater detail the procedural history of this case to place the defendant's present claims in their appropriate context.

On March 21, 1966, a Plymouth County jury convicted the defendant of murder in the first degree, and he was sentenced to death. On appeal, we reversed the judgment, *Commonwealth* v. *Smith*, 353 Mass. 487 (1968) (*Smith I*), because of our restatement of the law of insanity as affecting criminal responsibility, *Commonwealth* v. *McHoul, supra,* decided after the defendant's trial. The defendant was tried a second time. On April 26, 1968, a jury returned a verdict of guilty of murder in the first degree, and this time recommended that the death sentence not be imposed. The defendant received the mandatory sentence of life imprisonment. G. L. c. 265, § 2.

On the defendant's appeal after his second trial, we held that there had been no error at the trial.[1] *Smith II, supra.* In accordance with our statutory obligation under G. L. c. 278, § 33E, we conducted a plenary review of the record and

---

[1]The defendant had argued that the judge erred in denying the following motions: (1) motion for a change of venue; (2) motion to waive a jury; (3) motion that prospective jurors be questioned about their opinions on insanity as a defense; (4) motions for directed verdicts of not guilty by reason of insanity; and (5) motion for a new trial. *Commonwealth* v. *Smith*, 357 Mass. 168, 169 (1970) (*Smith II*).

determined that the verdict was consistent with the interests of justice.[2]

In 1990, the defendant filed, pro se, his first motion for a new trial since his appeal was heard,[3] and requested that counsel be appointed to represent him.[4] Counsel was appointed, but took no action and ultimately withdrew. His present counsel was appointed in December, 1995, and, on February 16, 1996, filed a substitute motion for a new trial, raising the three claims we described above. Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979). After a hearing, a judge in the Superior Court denied the motion on February 3, 1997. On March 19, 1997, a single justice of this court, pursuant to G. L. c. 278, § 33E, allowed an appeal "on the issues of the reasonable doubt instructions given by the trial judge and the alleged ineffectiveness of his trial and appellate counsel with the trial judge's use of the *Tuey* charge (as it was then called) with embellishment after the jury had been deliberating for a relatively short period of time."

1. *Instructions on reasonable doubt.* At the second trial, two psychiatrists testified that the defendant was not sane when he committed the murder, while the Commonwealth presented no rebuttal expert testimony on the question of the defendant's criminal responsibility. The defendant claims that in these circumstances the evidence of his sanity was far from overwhelming. It is in that context that he asks us to review the instructions on reasonable doubt.

---

[2]"The defendant has now had the benefit of two complete trials. Each was before a different judge and jury. The principal factual issue before the jury in each trial was the defendant's mental capacity as bearing upon his responsibility for otherwise criminal conduct. In each trial the jury were instructed that one of the verdicts which they were permitted to return was that the defendant was not guilty by reason of insanity. In each case they returned a verdict of guilty of murder in the first degree, thus finding that the defendant met the legal test for criminal responsibility. . . . Both trials were free from legal error." *Smith II, supra* at 182.

[3]Three days after the verdict in his second trial, the defendant filed a motion for a new trial alleging that "the verdict was against the evidence, contrary to the evidence and unwarranted by the evidence, against the evidence and the weight of the evidence, and against the evidence, the weight of the evidence presented and the law." *Smith II, supra* at 181. We considered the motion in connection with the defendant's direct appeal and concluded that it "raised no questions of law other than those raised either before or during the trial." *Id.*

[4]We are informed that the defendant's trial counsel, who also represented the defendant on direct appeal, is deceased.

The defendant did not object to the instructions on reasonable doubt at his trial or on appeal. We consider first whether he may do so now. In *Commonwealth* v. *Sires*, 405 Mass. 598 (1989), we considered a postappeal, collateral attack by a defendant convicted of a capital crime[5] on jury instructions to which he had not objected at his trial or on appeal. We said that where a defendant "did not have a 'genuine opportunity' to raise his constitutional claim on those occasions," the defendant is "entitled to raise [the] issue for the first time in a motion for new trial under Mass. R. Crim. P. 30." *Id.* at 600 n.2, quoting *DeJoinville* v. *Commonwealth*, 381 Mass. 246, 251 (1980), and *Commonwealth* v. *Burkett*, 396 Mass. 509, 512 (1986). Here, the motion judge (who was not the trial judge) did not explicitly consider whether the defendant had waived this claim. He noted that the defendant "relies primarily upon developments in the relevant law which have transpired since the time of his trial in 1968," and concluded that the defendant could claim the benefit of the "new rules" because they involved a "bedrock procedural element" that could be challenged in the light of recent developments in the law. Addressing the merits of the defendant's claims, he denied the motion.

General Laws c. 278, § 33E, in turn, provides in a capital case that "[i]f any motion is filed in the superior court after rescript [from this court], no appeal shall lie from the decision of that court upon such motion unless the appeal is allowed by a single justice of the supreme judicial court on the ground that it presents a new and substantial question which ought to be determined by the full court." See *Commonwealth* v. *Ambers*, 397 Mass. 705, 708 (1986) (relevant inquiry under G. L. c. 278, § 33E, is whether legal basis for defendant's argument is new and substantial at time of direct appeal). The single justice concluded that the "issue pertaining to the reasonable doubt instructions is new and substantial," and allowed the appeal on that issue. The Commonwealth, nevertheless, argues here that the defendant's claim was waived because the law on reasonable doubt instructions was "sufficiently developed at the time of [the defendant's] direct appeal to put him on notice that there was a potential appellate issue." We address that issue first.

The defendant argues that the instructions on reasonable doubt

---

[5]A "capital" case is defined in G. L. c. 278, § 33E, as one in which a defendant is indicted and convicted of murder in the first degree. See *Trigones* v. *Attorney Gen.*, 420 Mass. 859, 861 n.3 (1995).

were deficient in two respects. First, he claims that an instruction similar to the one used in *Commonwealth* v. *Madeiros*, 255 Mass. 304 (1926), that we have since criticized, see *Commonwealth* v. *Sheline*, 391 Mass. 279, 296 (1984), reduced the Commonwealth's quantum of proof below the standard required by the United States Constitution. See *In re Winship*, 397 U.S. 358, 363-364 (1970). The Commonwealth does not argue, nor could it, that the basis for this part of the defendant's claim was sufficiently established at the time of his direct appeal: for at least a decade after the defendant's direct appeal, the challenged language continued to be cited with approval. See, e.g., *Commonwealth* v. *Williams*, 378 Mass. 217, 233 (1979). That argument is "new." Second, the defendant claims that "reasonable doubt" was impermissibly defined as "moral certainty," without appropriate further explanation. Relying on *Commonwealth* v. *Gerald*, 356 Mass. 386, 390 (1969), the Commonwealth says it is this argument that was open to the defendant on direct appeal. We disagree. In *Commonwealth* v. *Pinckney*, 419 Mass. 341, 342-343 (1995), a postappeal collateral attack on reasonable doubt instructions in a capital case, we said that "case law regarding the constitutionality of the phrase 'moral certainty' in a reasonable doubt instruction developed after the date of the defendant's original appeal," and that it was therefore proper to consider the defendant's challenges to the reasonable doubt instructions. In *Pinckney*, the defendant's conviction was affirmed on direct appeal in 1973, three years after the direct appeal in this case. Our ruling in *Pinckney* disposes of the Commonwealth's argument. As both claims of the defendant are "new," waiver is no longer a consideration, and it is appropriate for us to consider the defendant's challenges to the reasonable doubt instructions. See *Sires*, *supra* at 600; *Ambers*, *supra* at 708.

We review the instructions on reasonable doubt to determine whether "a reasonable juror could have used the instruction incorrectly." *Commonwealth* v. *Anderson*, 425 Mass. 685, 688 (1997), quoting *Commonwealth* v. *Rosa*, 422 Mass. 18, 27 (1996).[6] The defendant first challenges the following instructions:

---

[6]Our standard of review of jury instructions is more favorable to defendants than the Federal standard. The latter ascertains "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the [*In re Winship*, 397 U.S. 358 (1970)]

"Proof beyond a reasonable doubt: First, I will tell you what it isn't. Proof beyond a reasonable doubt is not proof beyond all doubt. It is not proof to an absolute certainty. It is not proof to a mathematical certainty. Crimes by their very nature are usually committed in some dark, secluded area. And if we ever imposed upon the Commonwealth the awesome burden of proving that beyond all doubt this defendant committed the crime, we'd live in a greater jungle than we live in today."

The challenged language, similar to the instruction we approved in *Commonwealth* v. *Madeiros, supra,*[7] is defective, he says, because it encouraged the jury to accept a less than constitutionally required level of proof from the Commonwealth so that the task of convicting criminals would be made easier. Recently we have criticized the language "as warning the jury of holding the prosecution to too high a standard of proof." *Pinckney, supra* at 348. But where a *Madeiros*-type charge has been given, we look to see whether the potentially harmful effect is balanced by some other aspect of the instructions. See, e.g., *Commonwealth* v. *Sheline*, 391 Mass. 279, 296 (1984) (effect of *Madeiros* charge "was balanced in part by the statement that '[a] verdict of guilty cannot be based upon a mere prejudice, presumption, speculation, or suspicion,' and by the judge's emphasis throughout his charge that the jury's verdict must be based on the evidence presented at trial"); *Commonwealth* v. *Tavares*, 385 Mass. 140, 148, cert. denied, 457 U.S. 1137 (1982) (no substantial likelihood of miscarriage of justice in case arising under G. L. c. 278, § 33E, where judge instructed jury five times that "the Commonwealth had

standard." *Victor* v. *Nebraska*, 511 U.S. 1, 6 (1994). "Under art. 12 [of the Massachusetts Declaration of Rights], we use a standard more favorable to a defendant; we look for 'possible misunderstandings by reasonable jurors.' " *Commonwealth* v. *Anderson*, 425 Mass. 685, 689 n.8 (1997), quoting *Commonwealth* v. *Rosa*, 422 Mass. 18, 27 n.10 (1996).

[7]In *Commonwealth* v. *Madeiros*, 255 Mass. 304, 307 (1926), the judge in that case instructed:

"Proof beyond a reasonable doubt does not mean proof beyond all doubt, nor beyond a whimsical or fanciful doubt, nor proof beyond the possibility of innocence. . . . If an unreasonable doubt or a mere possibility of innocence were sufficient to prevent a conviction, practically every criminal would be set free to prey upon the community. Such a rule would be wholly impractical, and would break down the forces of law and order, and make the lawless supreme."

the burden of proving beyond a reasonable doubt every essential element of the crimes"); *Commonwealth* v. *Carballo*, 381 Mass. 227, 229 (1980) (no cause for reversal under G. L. c. 278, § 33E, where defendant took no exception to charge, and where judge charged in detail on presumption of innocence, repeatedly charged that Commonwealth bore the burden of proof, and defined reasonable doubt in terms of moral certainty). The charge in this case is less objectionable than the charges given in these other cases where, despite a *Madeiros*-inspired instruction, we affirmed the convictions.

The judge instructed here that it was "important in the administration of justice . . . that no innocent person be convicted," and told the jury that this was a "most serious" case, and one "that will weigh on your conscience for, I daresay, the greater part of your life." He said that the jurors were bound by "the duty of impartiality," especially because the defendant was on trial "for his life," and that the defendant was presumed innocent.[8] The judge repeatedly instructed the jurors that they must be convinced beyond a reasonable doubt that the defendant was guilty, and specifically that "at the time the accused committed the unlawful act he was mentally capable of knowing what he was doing." The jury were told to "[d]ecide this case according to the facts and according to the law as given to you, not with a feeling of hostility towards the defendant or any feeling of prejudice or anything of that nature." Because the judge made clear that the Commonwealth had the burden of proving the defendant's guilt beyond a reasonable doubt, and because the warning was balanced by his statement that a guilty verdict could not be based on prejudice, there was no reversible error in the instructions on the basis of the first claim of the defendant. See *Sheline, supra* at 296.

The defendant next argues that the judge improperly defined "proof beyond a reasonable doubt" as "proof to a moral certainty."[9] The defendant attacks the instructions in two respects. First, he says, the term "moral certainty" is not

[8] Although a page of the transcript of the judge's instruction is missing, a reference on the following page indicates that the judge had explained the presumption of innocence to the jury. We are informed that all copies of the transcript of the defendant's 1968 trial have been lost, although appellate counsel was able to locate an almost complete copy of the judge's instructions to the jury.

[9] The judge gave the following instructions:

explained in terms of the Commonwealth's high burden of proof, and second, the definition of the term was confusing, and conveyed only a general theme that the jury were to be morally correct to convict the defendant. We recognize, as has the United States Supreme Court, that if the term "moral certainty" is used in isolation without explanation, it does not convey the high degree of certainty required for conviction. See *Victor* v. *Nebraska*, 511 U.S. 1, 16 (1994) (reversal required if term "moral certainty" is used without explanation); *Commonwealth* v. *Bonds*, 424 Mass. 698, 702-703 (1997) (on direct appeal, new

"Proof beyond reasonable doubt means proof to a *moral certainty*. When, in the mind of an earnest, conscientious individual there remains settled the feeling of guilt, an awareness that this man is guilty, a *moral certainty*, a moral awareness, if you will.

"I dare say, you don't have to be told that at some time in your life as rational human beings, you became aware of a wrongdoing. It may have occurred at any stage of your life when, without anyone telling you, you knew that you couldn't let the air out of your next door neighbor's tires or that you weren't about to break a window next door. There was an awareness. You had a conscience, and that is what proof to a moral certainty means. Proof to the mind of the individual earnestly seeking the truth that there is a settled feeling of guilt about the defendant."

The judge used the term "moral certainty" in a later part of the instruction:

"Another learned Judge said this about the probative character of circumstantial evidence. This is Chief Justice Rugg in Commonwealth versus Russ [238 Mass. 58 (1921)], 'It is that the circumstances must be such as to produce a moral certainty of guilt and to exclude any other reasonable hypothesis; that the circumstances taken together should be of a conclusive nature and tendency, leading on the whole, to a satisfactory conclusion and producing, in effect, a reasonable and moral certainty that the accused, and no one else, committed the offense charged. . . .'

"In other words, you must be satisfied to a moral certainty to all the factors, and I am not referring to anything specifically, but you heard of paint chips, of fibers, of where they were found and whether or not they were consistent, all of these items, the exhibits, the knives and so forth, whether they were consistent with wounds, all of these, you must be satisfied to a moral certainty that the circumstantial factors lead to a chain of events that point to the eventual feeling on your part to the guilt of this individual."

trial required because only explanation of "moral certainty" was reference to certainty required for important personal decisions). But cf. *Commonwealth* v. *Gagliardi*, 418 Mass. 562, 571 (1994), cert. denied, 513 U.S. 1091 (1995) ("moral certainty" used in isolation "might" amount to an erroneous instruction on reasonable doubt).

The Commonwealth concedes that the paragraph immediately following the first use of the term "moral certainty" might have been confusing. See note 9, *supra*. There the judge gave the jury no guidance on the degree of certainty required for the Commonwealth to meet its burden. But the question remains whether the judge, in some other respect, gave content to the term "moral certainty" sufficient to inform the jury of the high degree of certainty they must possess in order to convict the defendant. In *Commonwealth* v. *Pinckney*, 419 Mass. 341 (1995), the instructions on reasonable doubt used the phrase "moral certainty" three times, the first two in isolation and the third followed by language that "properly impressed upon the jury the need to reach a subjective state of near certitude of the guilt of the accused." *Id.* at 347. We nevertheless found the instructions objectionable because of "numerous inconsistencies that permeated the charge on the definition of reasonable doubt," *id.*, and because the judge "clearly misstated the law," *id.* at 348, when he used language based on the charge in *Commonwealth* v. *Madeiros*, 255 Mass. 304 (1926). We concluded in that case that these errors, in conjunction, led to the conclusion "that the instruction failed to convey accurately to the jury the meaning of reasonable doubt." *Id.* at 349.

We have already concluded that, unlike the case in *Pinckney*, *supra*, the judge did not convey the incorrect standard of proof when he used language based on the *Madeiros* charge; here there was no "clear misstate[ment]" of the law. Further, in this case, like *Pinckney*, the judge used the phrase "moral certainty" several times, but here there were not the "numerous inconsistencies" throughout the remainder of the charge that plagued the definition of reasonable doubt in *Pinckney*. Because those errors are not present here, we look to the charge as a whole to determine whether it appropriately made clear to the jurors that "beyond a reasonable doubt" is a high standard of proof. *Commonwealth* v. *Gonzalez*, 426 Mass. 313, 318 (1997).

In this case the standard was met. The judge instructed that to find the defendant guilty, the evidence had "to produce a

moral certainty of guilty and to *exclude any other reasonable hypothesis*" before the jury concluded that "the accused, and no one else, committed the offense charged" (emphasis added). Before he used the term "moral certainty" to define reasonable doubt, the judge contrasted the requisite level of proof with an absolute or mathematical certainty. "The juxtaposition suggests that the requisite level of confidence was, indeed, substantial, though not proof beyond *all* doubt" (emphasis in original). *Gilday* v. *Callahan*, 59 F.3d 257, 263 (1st Cir. 1995), cert. denied, 516 U.S. 1175 (1996), citing *Pinckney, supra* at 347. The judge emphasized that the jurors were on "a search for the truth," and they were to determine where the truth lay "so that you can always say to yourself you are satisfied you returned a verdict according to your conscience." See *Commonwealth* v. *Limone*, 410 Mass. 364, 369-370 (1991). Finally, before the jury retired to deliberate a second time, the judge further instructed that the defendant was presumed to be innocent, that the law imposed on the Commonwealth the burden to establish "every part of" the case, and that, if "in any part" of the case the jury were left in doubt, "the defendant is entitled to the benefit of the doubt, and must be acquitted." While the instructions could have been more eloquent, and the concept of reasonable doubt explained more fully, viewed as a whole, we conclude that the instructions "correctly conveyed to the jury the level of proof required to convict the defendant." *Commonwealth* v. *Gagliardi*, 418 Mass. 562, 572 (1994).

2. *The* Tuey *charge and ineffective assistance of counsel.* The defendant argues that his right to due process under both the Massachusetts Declaration of Rights and the United States Constitution was violated when the judge prematurely delivered the instruction described in *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851).[10] The instruction was given at 6:17 P.M., after ap-

---

[10]Relevant parts of the *Tuey* charge (*Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 [1851]) delivered to the jury are as follows:

"Although the verdict to which a juror agrees must of course be his own verdict, the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows, yet, in order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor, and with a proper regard and deference to the opinions of each other. . . . In the present case, the burden of proof is upon the Commonwealth to establish every part of it, beyond a reasonable doubt; and if, in any part of it, you are left in doubt, the

proximately four or five hours of deliberations.[11] The jury retired at 6:26 P.M., and at 6:38 P.M. the jury returned a verdict of guilty

> defendant is entitled to the benefit of the doubt, and must be acquitted. But in conferring together, you ought to pay proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments. And, on the one hand, if much the larger number of your panel are for a conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one, which makes no impression upon the minds of so many men, equally honest, equally intelligent with himself, and who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth, and under the sanction of the same oath. And, on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably and ought not to doubt the correctness of a judgment, which is not concurred in by most of those with whom they are associated; and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows."

The judge also charged:

> "I certainly don't want to convey the impression upon you that you must reach a verdict. Of course there have been times when jurors have not been able to agree. But I must ask you in all earnestness to examine your own individual conscience and realize that this trial has been long; it's been distasteful to many people, the defendant, to the Commonwealth, many people have come here to give you evidence, and to attempt to say to you that the deliberations that you have begun, can you not in your own good conscience, those of you that are in the minority, whether it be one way or the other — because no one knows how, what your deliberations consist of — can you in your good conscience say that your verdict could be the verdict of your fellow jurors.

> "Now, I only tell you that, to give you some idea what we propose to do: I propose to stay here until you come to a verdict. We are not going out for dinner. If you feel that you are that far away from a verdict, the officers will take your requests for sandwiches and coffee and we will stay here.

> "Because it's far too important to the defendant, to the Commonwealth, to have endured a week of trial with a jury that says it cannot agree. . . .

> "I ask you, as the language in *Tuey* says, to reexamine your position and to see whether or not perhaps there might be a bar that you have placed there that is not reasonable and not as a conscientious juror."

[11]The defendant claims that the jury had deliberated for only four hours. The record makes clear that during the lunch hour that preceded the jury

of murder in the first degree, and recommended that the death penalty not be imposed. At trial, the defendant did not object to the charge, nor did he raise the issue on direct appeal. The defendant makes no claim here — and none commands our attention — that he did not have a "genuine opportunity" to raise this issue on those occasions. *Commonwealth* v. *Sires*, 405 Mass. 598, 600 n.2 (1989). The motion judge addressed the claim on the merits, but the single justice concluded that this alleged error in the charge was "fairly obvious so that it cannot be said to be 'new.' " We agree. This issue was waived. The appeal on this point was not allowed by the single justice, and ought not to have been argued by the defendant here.

The defendant also argues that the lawyer who served as his trial and appellate counsel was constitutionally ineffective because he did not object to the *Tuey* charge. It was on this basis, and this alone, that the single justice allowed the defendant to raise the issue of the *Tuey* charge. Where we have given a defendant convicted of murder in the first degree full review pursuant to the obligations imposed by G. L. c. 278, § 33E, "our special powers of review under § 33E are no longer applicable. Any claim of ineffectiveness of counsel presented in a subsequent appeal from the [disposition] of a motion for a new trial, authorized by a single justice of this court, would not be tested under the § 33E standard but on the applicable constitutional standards, State and Federal." *Commonwealth* v. *Haley*, 413 Mass. 770, 775 (1992), quoting *Commonwealth* v. *Wright*, 411 Mass. 678, 682 n.1 (1992). See *Commonwealth* v. *Roberts*, 423 Mass. 17, 20 (1996). A defendant must show that there was "serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer." *Haley, supra,* quoting *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Even if incompetency is found, the defendant must also show that he has likely been deprived of an "otherwise available, substantial ground of defence." *Haley, supra.* See *Strickland* v. *Washington*, 466 U.S. 668, 687 (1984); *Commonwealth* v. *Fuller*, 394 Mass. 251, 256 n.3 (1985).

Was the lawyer incompetent when he failed to object to the *Tuey* charge? *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 97-101 (1973), decided five years after the defendant's second

---

deliberations, the judge had segregated the alternate jurors, and encouraged the members of the jury to begin deliberations during the lunch hour.

trial, was the first occasion in which we criticized a charge to the jury such as the one given in *Commonwealth* v. *Tuey*, 8 Cush. 1 (1851), and there was no reason why counsel should have anticipated our criticism of such a charge. Certainly, the issue was not obvious to us when we conducted our plenary review pursuant to G. L. c. 278, § 33E, in 1970. We cannot conclude counsel was necessarily incompetent when he raised no objection to the charge.

Nor are we persuaded that, even by the legal standards developed after the defendant's direct appeal, the charge was so coercive that the failure of counsel to have objected was behavior that fell "below that which might be expected from an ordinary fallible lawyer," *Saferian, supra* at 96. See *Commonwealth* v. *Haley*, 413 Mass. 770, 779 (1992); *Commonwealth* v. *Watkins*, 375 Mass. 472, 492 (1978); *Commonwealth* v. *Rodriquez, supra* at 98. In *Rodriquez*, for example, we criticized the use of a *Tuey* charge as tending to coerce the jury to reach a verdict. We noted two main criticisms of the charge: first, its misstatement of the fact that the "case must at some time be decided," and second, because it asks "the members of the tentative minority to reconsider their position in the light of the views of the tentative majority, but does not invite the majority members to reciprocate toward the minority." *Id.* at 99. Here, after delivering the charge, the judge informed the jury that he "certainly" did not want to "convey the impression upon you that you must reach a verdict," and explicitly told the jury that there are times when jurors have "not been able to agree." This avoided the first concern that we later addressed in *Rodriquez* — telling the jury that the "case must at some time be decided." *Id.* at 98-99. That the instruction was given after five — or even four — hours of deliberation is also not determinative. See *Commonwealth* v. *Haley*, 413 Mass. 770, 779 (1992) (no error where *Tuey* charge given after approximately four hours of deliberation); *Commonwealth* v. *Rollins*, 354 Mass. 630, 638 (1968) (same). The defendant argues that the instruction must have been coercive (and his lawyer incompetent for not perceiving that threat), because the jury returned with a guilty verdict of murder in the first degree a mere twelve minutes after the charge. That conclusion is not warranted. See *Lowenfield* v. *Phelps*, 484 U.S. 231, 235, 240 (1988) (where jury returned verdict sentencing petitioner to death thirty minutes after charge and where defense counsel did not object, "the potential for

coercion . . . was not apparent to one on the spot"). See also *Commonwealth* v. *Brunelle*, 361 Mass. 6, 12 (1972) (no error where jury returned with verdict of guilty ten minutes after *Tuey* charge). The judge told the jury that, if they were "far away from a verdict," the court officers would make arrangements for food to be brought to the jury room. We do not think that the lawyer's failure to object was any indication of incompetence. See *Commonwealth* v. *Watkins*, 375 Mass. 472, 492 (1978) (no jury coercion where judge refused defendant's requests to allow jurors to go home, sent jury back for continued deliberations at 11:15 P.M., and jury returned guilty verdict twenty minutes later).

No explanation illuminates why the judge decided to give a *Tuey* charge in the early part of the evening of the first day of deliberations. There is nothing in this record to indicate where the jury stood at the time they received the instruction. See *Haley, supra* at 779-780. We noted in *Haley, supra* at 779, that "[a] trial judge has discretion in deciding when to give the charge." We have concluded that the charge given here was not inherently coercive. We cannot rule out the possibility that trial counsel had a strategic reason for not objecting to the charge.[12] "Trial tactics which, from the vantage point of hindsight, can be seen to have failed do not amount to ineffective assistance unless 'manifestly unreasonable' when undertaken." *Commonwealth* v. *Sielicki*, 391 Mass. 377, 379 (1984). In failing to challenge the *Tuey* charge at trial and on appeal, counsel was not constitutionally ineffective. We decline to order a new trial on the basis of this claim of the defendant.

> *Order denying motion for a new trial affirmed.*

---

[12]Although the defendant was convicted of murder in the first degree, we note that at the conclusion of his trial under review here, the jury recommended that the penalty of death not be imposed. At the conclusion of his first trial, the jury had declined to recommend that the penalty of death not be imposed. *Commonwealth* v. *Smith*, 353 Mass. 487, 487-488 (1968).